# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 94

APRIL TERM, A.D. 2013

August 7, 2013

MICHAEL JESSE MUNOZ,

Appellant
(Defendant),

v.

S-12-0191

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

*Representing Appellee:*
Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Jeffrey S. Pope, Assistant Attorney General. Argument by Mr. Pope.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**VOIGT, Justice.**

[¶1]    A jury found the appellant guilty of three counts of first-degree sexual abuse of a minor. On appeal, the appellant raises four separate allegations of error in the district court. We will reverse on the single issue set forth below and remand the matter to the district court for further proceedings.

## ISSUE

[¶2]    Did the district court abuse its discretion when, under the particular circumstances of this case, it reversed its prior ruling and admitted certain uncharged misconduct evidence under W.R.E. 404(b), such reversal occurring after the State had rested?

## STANDARD OF REVIEW

[¶3]    Our standard for reviewing decisions regarding the admissibility of uncharged misconduct evidence under W.R.E. 404(b) is as follows:

> We review claims of error concerning the improper admission of W.R.E. 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006). A trial court abuses its discretion when it could not have reasonably concluded as it did. *Id*. In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious. *Id*.

*Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007).

## FACTS

[¶4]    On October 28, 2011, the appellant was arraigned in the district court on one count of second-degree sexual abuse of a minor, and three counts of first-degree sexual abuse of a minor. The alleged victim of all four crimes was the appellant's eleven-year-old niece. On October 10, 2011, the appellant filed a general discovery demand that included a demand for notice of the State's intent to introduce evidence under W.R.E. 404(b).[1]

---

[1] W.R.E. 404(b) reads as follows:

> (b) *Other crimes, wrongs, or acts.* -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

1

The appellant's discovery demand, including notice of the State's intent to introduce evidence under W.R.E. 404(b), was granted by an order of the district court filed on November 12, 2011.

[¶5]    More than three months later, and only a few days before trial, the State filed its Notice of Intent to Introduce 404(b) Evidence.  In that notice, the State indicated that it intended, among other things, to call A.M. to testify as the victim of appellant's conviction of the crime of indecent liberties with a minor in 1994, about eighteen years prior to the current event.  In response, the appellant filed a Motion in Limine opposing admission of the State's evidence.  A few days later, the appellant filed a lengthier objection to admission.  In his objection, the appellant analyzed the factors this Court set forth in *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002), for district courts to follow in determining whether to admit uncharged misconduct evidence under W.R.E. 404(b).  In contesting admission of the evidence, the appellant focused upon his lack of any opportunity at that late date to develop a response to the evidence, and upon the unfair prejudice to him of telling the jury about an eighteen-year-old conviction for an offense similar to the one presently charged.

[¶6]    The State responded to the appellant's motion and objection with a brief filed on March 8, 2012.  The State contended that the testimony about the prior events and conviction was being offered to prove motive, to corroborate the victim's testimony, to show that the appellant followed a general course of conduct or plan with each victim, and to prove the appellant's identity as the perpetrator of the presently charged crime.

[¶7]    On the first day of trial, prior to *voir dire*, the district court heard the appellant's objections to the uncharged misconduct evidence.[2]  As to the testimony of A.M. in regard to the eighteen-year-old conviction, the judge had this to say:

> As to the next matter, now adult witness, AM for who was the victim in same or similar circumstance, and I take all that on face value, the Court in weighing that evidence and the effect of that evidence finds today that that evidence must be excluded.  As an offer of 404(b) before I got to the prejudice I

---

intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[2] The hearing on the admissibility of the State's proferred uncharged misconduct evidence actually began on the Friday afternoon just prior to the Monday morning trial.  During that hearing, the judge complained that the issue was being presented so late in time, especially because his ruling on the 404(b) issue would impact his ruling on proposed redactions to be made in interview transcripts.

have to find the factors I would have to consider, I have to find a stated purpose, and the stated purpose the one closest enough relating to this case is same or similar act occurred before, so he couldn't deny it, I suppose. ***There is no way after 18 years I could find that his having been convicted of that are anything other than attempts to sway the jury, that for which 404(b) prohibits.*** He did it before, ladies and gentlemen of the jury. He did it in a same or similar circumstance. He's outright denied he did it.

Now, I'm taking into account because the [other] testimony on the same thing, I have to also take into account [she] argued, [the prosecutor], that he may be a groomer of some kind, somebody -- not just propensity evidence, but instead, was setting it up.

Again, I find difficulty with the proposition under the circumstances because the setup, if I allowed that be -- that he lied to the parents -- not about being a sex offender at all, but kind of a sex offender he was in order to groom somebody, five years or four years later with no intervention in between. In fact, I adopted this from his interview, he has kids of his own, so no reasonable juror, I think, would be in the first instance connecting up that lie about being a sex offender for what reasons he's a sex offender. He didn't lie about the reasons; the underlying offense. There's no rational way to tie that up and make it simply grooming or access or opportunity, which I think is the exception, or the purpose, and under the political [sic] standard I have to find purpose first.

***I'll go further though and find this, that as to the evidence, a conviction for a sex offense 18 years ago, lie about being a sex offender and status of being a sex offender every one of those under the circumstances presented here in my view unfairly. Without any hesitation, I have to say, that are prejudicial -- extraordinarily prejudicial, even if I accepted the purpose.*** I know no one wants a record where the judge ruled in the alternative at that time.

***What I'm saying, first off, the purpose offered does not rationally fit; in other words, what purpose does it serve***

3

*to put it in. It serves only the purpose that I reacted to begin with; that is, it's propensity evidence, and I can't allow that. Even if I got past the purpose, at this juncture, trying him for a sexual assault of a 9-year-old before and the nature of that act, the reprehensible conduct of that is not something I think the jury would be able to set aside. That's what they're supposed to be able to do if it gets in following a limiting instruction in that regard.*

That results in the motion in limine being granted so that the evidence of previous conviction for indecent liberties, the underlying statements of AM that make out that conviction, and status as a registered sex offender are not to be elicited by counsel or the State *in their case in chief.* I understand that would be mostly different witnesses.

In any event, investigating officer or otherwise is not to address those matters.

The defense motion, or separate motion of the defense also asks that the evidence of sex offense and the evidence of registration be excluded, and that motion's granted. ***There's extraordinary prejudice associated with those matters on the face of the record today.*** (Emphasis added.)

[¶8]    The district court concluded this ruling with an explanation that, were circumstances to change during the trial, and counsel for either side wished to seek approval to introduce the excluded evidence, counsel should approach the bench and inquire privately, rather than in front of the jury. The district court's perception that the matter would again arise was realized fairly quickly, when, after *voir dire* and opening statements, the State asked outside the jury's presence to be allowed to introduce A.M.'s testimony. The State reasoned that "when we addressed this previously that the victim's credibility had not yet been attacked, and the defense attacked the victim's credibility in voir dire and in the opening statement[.]" After discussing for some time with counsel how the appellant's prior conviction could affect this victim's credibility, and whether such was even an appropriate use of W.R.E. 404(b), the district court again denied the State's request on the ground that "[i]t is too soon." The import of the district court's remarks was that, even if uncharged misconduct evidence could be presented to corroborate a victim's testimony, this particular victim's credibility had not yet been tested sufficiently to admit such evidence.

[¶9]    During its case-in-chief, the State called twelve witnesses to testify, including the alleged victim, who was the State's final witness. Defense counsel did not cross-examine

4

the alleged victim.  At that point, the State rested its case.  After a brief hiatus, during which the district court denied the appellant's motion for judgment of acquittal, the prosecutor announced her intention to "make one last attempt" at getting the W.R.E. 404(b) evidence admitted.  After some discussion about the effect of the State having rested its case, the district court allowed the State to renew its request, opining that "[i]t was clear I was going to have to address it again."

[¶10]  In support of her third attempt to gain approval of admission of the eighteen-year-old conviction, the prosecutor presented a relatively short argument, which is capsulated in the following quotation:

> [PROSECUTOR]:  Your Honor, I appreciate you entertaining this motion again.  I am requesting the Court allow the State to present the testimony of AM.  I think it has become abundantly clear that the victim -- the victim's credibility and corroborating the victim's statement is very important, in a case like this.
>
> I renew my motion as it relates to motive also, and rely upon what I previously argued as the reason that motive and victim corroboration are important.  This Court has asked the State over and over why is this not propensity evidence, and while I've indicated that the Court is dancing around the issue, it was actually I who was dancing around the issue.
>
> This is propensity evidence.  All 404(b) is propensity evidence; however, the Court directs the jury not to consider it as propensity evidence, but to consider it for the proper purpose.  The State is requesting the testimony of AM be allowed.

[¶11]  This brief presentation was followed by the following colloquy between defense counsel and the judge:

> [DEFENSE COUNSEL]:  Your Honor, the Court has ruled on this.  This will be the third time the Court's asked to rule on it.  I think the Court's ruled correctly.  It is -- a lot of this is up to the Court's discretion.  I will tell -- I mean, since the last time this motion was made there's been even less of any allegations that were challenging her truthfulness.  Every witness' credibility is.  It's always that way, but we didn't even cross-examine [the alleged victim].  I mean, I think if

5

anything, we've tailored our defense to the instructions of the Court in understanding where the Court is on 404(b).

If the Court were to allow this right now I'm not going to challenge you. I think I would be in a position -- in a right position to ask for a mistrial because our whole strategy has been based on one direction and --

THE COURT: Well, it's a direction in fairness that you learned about on Monday morning of trial; isn't that correct, Counsel?

[DEFENSE COUNSEL]: Yes, but everything from voir dire to opening to witnesses, how we're going to handle the witnesses, what we're going to ask the witnesses, everything we've done up to this point has been based on the fact we're not going to have 404(b).

THE COURT: As a general proposition you believe as things change during the trial your -- the pretrial rulings that went for you or against you, either one, are grounds for a mistrial; in other words, you weren't prepared to try the case with or without the 404(b), two entirely different cases.

[DEFENSE COUNSEL]: Yes. The questions we have put to the witnesses would have been completely different.

[¶12] In granting the State's request, the Court concluded that

as to the prior event and consequence the prejudice here is now outweighed by the probative value for purposes of intent, of identity of motive to assault a child of this age and so forth, and to a lesser degree, but clearly, to evaluate the corroboration and corroborate the victim's testimony.

[¶13] This issue is presented as a W.R.E. 404(b) issue--did testimony presented during the State's case-in-chief justify the district court's decision to admit the uncharged misconduct evidence? More specifically, did the appellant's denial of guilt during his police interview, which interview the State presented to the jury, along with expert testimony that someone's DNA besides the appellant's may also have been present on the alleged victim's clothing, justify reversal of the not-yet-cold determination that the uncharged misconduct evidence was more prejudicial than probative, and was now, rather than being merely propensity evidence, evidence of motive and corroboration of

6

the alleged victim's testimony?[3] The focal question, however, would seem to fit any number of pretrial evidentiary rulings that impact the way a defendant presents his or her case to the jury. Stated more directly, the question here is the effect on a defendant's right to a fair trial of the district court reversing an evidentiary ruling after the defendant has already acted to his detriment in reliance upon that ruling.

[¶14] The State contends that it was not error for the district court to reverse itself on the evidentiary ruling because "things had changed." Specifically, the State argues that, when the district court first ruled to deny admission of the evidence, both the district court and the State were unaware that the appellant was going to deny guilt, and that he was going to question the alleged victim's credibility. This, of course, is nonsense. The appellant had plead not guilty, he had denied the accusations in a recorded interview, which interview the State intended to, and did present, to the jury. There was never any hint that the appellant's defense was going to be anything other than "I didn't do it," which defense necessitated questioning the alleged victim's credibility.

[¶15] Having won the W.R.E. 404(b) battle in regard to A.M.'s uncharged misconduct testimony, the appellant went through *voir dire*, opening statements, and the State's entire

---

[3] As we have previously pointed out, making a distinction between "propensity" evidence and evidence that simply corroborates the victim's testimony is not meaningful:

> The First District Court of Appeal allowed the admission of [the daughter's] testimony [] because it established a pattern of criminality. Though rejecting the district court's rationale, the Florida Supreme Court affirmed the result, holding that the better view was to treat the evidence as relevant to corroborate the victim's testimony, not to establish a pattern of criminality. However, the court was simply playing a game of semantics. There is no difference, in effect, between admitting evidence to show a pattern of criminality and admitting evidence to corroborate the victim's testimony. The evidence was relevant to corroborate the victim's testimony because it established a pattern of criminality. The effect of the court's decision is to allow evidence to establish that the defendant had the propensity to commit the offense in order to bolster the credibility of the victim. Whether it is to corroborate the victim's testimony, or to establish a pattern of criminality, the evidence will be admitted solely to show the defendant's propensity to commit crimes, which is strictly prohibited by section 90.404(2).

> John McCorvey, Note, *Corroboration or Propensity? An Empty Distinction in the Admissibility of Similar Fact Evidence*, 18 Stetson L.Rev. 171, 187-88 (1988) (footnote omitted). This insightful analysis underscores the difficult line-drawing inherent in exercising discretion under Rule 404(b).

*Hart v. State*, 2002 WY 163, ¶ 28 n.6, 57 P.3d 348, 358 n.6 (Wyo. 2002).

case-in-chief without addressing the "prior bad act" and without tailoring his defense to address that damning fact. Most importantly, defense counsel did not cross-examine the alleged victim for fear of "opening the door" to A.M.'s testimony. Then, when it was too late for all of that to be undone, the district court reversed its previous rulings and admitted the evidence. Understandably, defense counsel had not presented the case so as to include an approach to this evidence. We conclude that, regardless of the righteousness of the final ruling as a matter of W.R.E. 404(b) jurisprudence, the ruling was unfairly prejudicial to the appellant because it deprived him of a fair trial.

[¶16] Although we have not previously addressed the specific question now before the Court--the effect upon the appellant's right to a fair trial of this midstream change of horses--we have many times discussed the significance of providing a defendant a constitutionally fair trial. *See, e.g., Harlow v. State*, 2005 WY 12, ¶ 5, 105 P.3d 1049, 1055 (Wyo. 2005); *Williams v. State*, 2004 WY 117, ¶ 21, 99 P.3d 432, 445 (Wyo. 2004); *Strickland v. State*, 2004 WY 91, ¶ 44, 94 P.3d 1034, 1053 (Wyo. 2004); *Belden v. State*, 2003 WY 89, ¶ 9, 73 P.3d 1041, 1049 (Wyo. 2003); *Rodriguez v. State*, 962 P.2d 141, 145 (Wyo. 1998); *Fortner v. State*, 932 P.2d 1283, 1284 (Wyo. 1997); *Daniel v. State*, 923 P.2d 728, 733 (Wyo. 1996); and *Miller v. State*, 904 P.2d 344, 352 (Wyo. 1995). What is striking about these cases is that, although we recognize the right to a fair trial, we almost never find that a trial was unfair--no matter what happened! The same can be said where, although the cases again are not strictly on point, they deal with the fundamental right of a defendant to present a defense, which is the right implicated by what happened in the instant case. *See, e.g., Gruwell v. State*, 2011 WY 67, ¶ 11, 254 P.3d 223, 227 (Wyo. 2011); *Bruyette v. State*, 2011 WY 99, ¶ 10, 253 P.3d 512, 514 (Wyo. 2011); *Breazeale v. State*, 2011 WY 10, ¶ 33, 245 P.3d 834, 843 (Wyo. 2011); *Bush v. State*, 2008 WY 108, ¶ 58, 193 P.3d 203, 217 (Wyo. 2008); *Person v. State*, 2004 WY 149, ¶ 14, 100 P.3d 1270, 1277 (Wyo. 2004); *Dysthe v. State*, 2003 WY 20, ¶ 5, 63 P.3d 875, 879 (Wyo. 2003); *Ramirez v. State*, 994 P.2d 970, 973 (Wyo. 2000); and *Herdt v. State*, 816 P.2d 1299, 1302 (Wyo. 1991).

[¶17] There is a similar list of cases where this Court recognizes the defendant's constitutional right to confront and cross-examine adverse witnesses--once again, a right affected in this case by the addition of an evidentiary fact by the district court's change of mind, after the State's witnesses had already testified and been subject to cross-examination. *See, e.g., Miller v. State*, 2006 WY 17, ¶ 7, 127 P.3d 793, 796 (Wyo. 2006); *Hannon v. State*, 2004 WY 8, ¶ 16, 84 P.3d 320, 329 (Wyo. 2004); *Amin v. State*, 686 P.2d 593, 595 (Wyo. 1984); *Mason v. State*, 631 P.2d 1051, 1055 (Wyo. 1981); and *Parker v. State*, 24 Wyo. 491, 500, 161 P. 552, 554 (Wyo. 1916).

[¶18] As mentioned above, this Court has rarely reversed a conviction based upon a "fair trial" argument. But surely it is much more important that we jealously guard a criminal defendant's right to a fair trial than that we jealously guard the State's ability to introduce uncharged misconduct evidence, especially in the way it happened in this case. The last-

cited case in the paragraph above may have said it as well as it can be said: "[I]f it clearly appears from the record that such fundamental and prejudicial error has been committed as to amount to a denial of substantial justice, or to deprive the defendant of a fair trial, the court should not hesitate to reverse the judgment and grant a new trial[.]" *Parker*, 161 P. at 554.

[¶19] The district court recognized and gave special attention to the extremely prejudicial nature of uncharged misconduct evidence, and forbade its introduction. That ruling determined how the appellant presented his case throughout *voir dire*, opening statements, and the State's case-in-chief, including how counsel did or did not cross-examine witnesses. When the game's rules changed, those things could not be undone. In addition, the "springing" of such surprise evidence in so dramatic a fashion--a re-opening of the evidence--surely exacerbated an additional problem:

> The trial court's error was compounded herein by the fact that the lower court changed the evidentiary rules mid-trial. In accordance with the trial court's pre-trial evidentiary ruling, Brewer's counsel made no mention of pre-accident drug use and arrests during opening arguments and direct examination of his primary witness, Kimberly Porche. Then, after direct examination of Mrs. Porche, the trial court changed the evidentiary rules and allowed defense counsel for the first time to introduce evidence related to Brewer's pre-accident drug use and arrests. The effect was to prejudice Brewer's counsel and witness and to give the appearance that they were hiding information from the jury.

*Brewer v. J.B. Hunt Transport, Inc.*, 9 So.3d 932, 944 (La.App. 1 Cir. 2009), *affirmed in part and reversed in part by Brewer v. J.B. Hunt Transp., Inc.*, 35 So.3d 230 (La. 2010).

[¶20] Under the particular circumstances that existed here, the delayed admission of the uncharged misconduct evidence was an abuse of discretion because it was not reasonable--it was not sound judgment under the circumstances. The W.R.E. 403 balancing had not changed; the evidence remained more prejudicial than probative. The necessity, if any, to introduce the evidence to corroborate the alleged victim's statements had not changed because the defense--"I didn't do it"--had not changed. The alleged victim was not even cross-examined, meaning the need to corroborate her testimony had not changed.

## CONCLUSION

[¶21]   In reaching the conclusion that the district court abused its discretion when it changed its prior ruling and allowed the evidence, we do not suggest that a district court may never reconsider a prior ruling on 404(b) evidence and allow evidence it previously ruled inadmissible.  To the contrary, a district court can and should reconsider a prior ruling when good reason appears on the record and no prejudice results.  Where, as here, however, the record does not show good reason existed and the evidence was clearly prejudicial, it was not reasonable for the district court to reverse its ruling.

[¶22]   Reversed and remanded to the district court for further proceedings.