# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 156

### OCTOBER TERM, A.D. 2013

### December 19, 2013

LASHAWN SIDNEY KING,

Appellant
(Defendant),

v.                                                          S-12-0187

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Elisabeth M.W. Trefonas, Assistant Public Defender;* Patricia L. Bennett, Assistant Public Defender. Argument by Ms. Bennett.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey S. Pope Assistant Attorney General. Argument by Mr. Pope.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

*Order Allowing Withdrawal of Counsel entered July 16, 2013.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1] The appellant, LaShawn Sidney King, was convicted of attempted first-degree murder, kidnapping, and two counts of aggravated assault and battery after he attacked the victim and hit her several times in the face and body with a sledgehammer. In this appeal, the appellant argues his convictions should be reversed because the district court improperly admitted evidence of the appellant's previous violent behavior against the victim, a transcript was provided to the jury of a telephone conversation between the appellant and the victim, and trial counsel was ineffective for waiving the appellant's right to a speedy trial.[1] Finding no error, we affirm.

## ISSUES

[¶2]    1.    Did the district court abuse its discretion when it determined that testimony regarding previous violence in the appellant's relationship with the victim was admissible under W.R.E. 404(b)?

2.    Did the district court abuse its discretion when it allowed the jury to review a transcript of a telephone recording between the appellant and the victim while the recording was being played at trial?

3.    Was trial counsel ineffective because he requested a continuance and filed a waiver of speedy trial signed by the appellant, contrary to the appellant's desire not to waive his right to a speedy trial?

## FACTS

[¶3]    On May 6, 2011, the appellant called the victim and asked her to go to a movie with him because he was moving to Detroit the next day. The victim reluctantly agreed, picked up the appellant from his apartment, and drove them to the movie theatre. The appellant asked the victim to park her van off to the side of the road instead of in the parking lot, but she refused and parked in the main parking lot. She then heard a "dull thump" inside the van. She turned and looked at the appellant, who was staring straight at her. The victim tried to get out of the van, but the appellant grabbed her by the hair and hit her in the eye with a sledgehammer. The appellant continued to hit the victim with the sledgehammer, hitting her again in the eye, the hand, and the back of her head.

---

[1] In his brief, the appellant also argued that his two convictions of aggravated assault and battery should have merged for the purposes of sentencing. However, at oral argument, the appellant conceded that the issue was moot after this Court's decision in *Sweets v. State*, 2013 WY 98, 307 P.3d 860 (Wyo. 2013).

1

[¶4]    The victim struggled out of the van as the appellant screamed that he was going to kill her.  The appellant grabbed the victim, forced her into the van, and drove the van away from the theatre.  As she was in the back of the van, unable to see clearly due to her injuries, the victim located her cell phone and called 911.  Although the victim did not have a conversation with the 911 dispatcher, she made statements to the appellant that gave the dispatcher an idea of where she was and what was happening to her.  Eventually, the victim hid the cell phone in a basket in the hopes the appellant would not notice the phone or that she had dialed 911.

[¶5]    After driving through the Casper area, the appellant stopped the van and asked the victim where her cell phone was located.  The appellant then rummaged through the back of the van until he found the cell phone in the basket.  The appellant began hitting the victim with his fists while telling her that he was going to kill her.  He removed the battery from the phone, threw the phone to the floor of the van, and began driving again.  Eventually, law enforcement officers were able to locate the van, arrest the appellant, and seek medical attention for the victim.  Following a jury trial, the appellant was convicted of attempted first-degree murder, kidnapping, and two counts of aggravated assault and battery.

**DISCUSSION**

***Did the district court abuse its discretion when it determined that
testimony regarding previous violence in the appellant's relationship
with the victim was admissible under W.R.E. 404(b)?***

[¶6]    Before trial, the prosecution filed a notice that it intended to use evidence, pursuant to W.R.E. 404(b), of the appellant's violent behavior in his relationship with the victim and towards a former girlfriend.  The prosecution asserted the evidence was proper to show the appellant's motive and intent when he attacked the victim, and that the appellant's actions toward the victim were not done by accident or mistake.  The appellant objected to the notice, asserting the notice did not describe the prior conduct with sufficient specificity, the evidence of prior conduct was unfairly prejudicial, and the prior conduct was too remote in time.  The district court held a hearing, wherein both parties gave lengthy arguments regarding the nature of the proposed evidence. Thereafter, the district court held another hearing where it gave an oral ruling regarding the evidence.  After conducting an analysis of each piece of evidence offered by the prosecution, it held that the prosecution could not introduce any evidence of the appellant's abuse against his previous girlfriend and several instances where the appellant allegedly threatened the victim's family members and accused the victim of cheating. However, the district court determined specific instances of violence by the appellant against the victim would be admissible.  The appellant now argues the district court's decision was an abuse of discretion because it listed several proper purposes for the use

2

of the evidence pursuant to W.R.E. 404(b), instead of identifying one specific purpose for each piece of evidence.

[¶7]    When reviewing a district court's decision regarding the admissibility of evidence pursuant to W.R.E. 404(b), this Court uses the following standard of review:

> We review claims of error concerning the improper admission of W.R.E. 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006).  A trial court abuses its discretion when it could not have reasonably concluded as it did.  *Id*.  In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious.  *Id*.

*Munoz v. State*, 2013 WY 94, ¶ 3, 307 P.3d 829, 830 (Wyo. 2013) (quoting *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007)).  Further, if the evidence was admitted in error, we must determine whether the error was prejudicial.  *Rolle v. State*, 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010).  "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made."  *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010).

[¶8]    In *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo. 2002), this Court admonished the district courts from engaging in the "shotgun approach" of listing every conceivable purpose for the admissibility of evidence under W.R.E. 404(b), followed by a nondescript statement that the probative value of the evidence outweighs the prejudicial effect.  *Id*. at ¶ 30, at 343.  Instead, we required the record to reflect "the trial court's identification of the purpose or purposes for admission of the evidence, the findings and conclusions establishing relevance and probative value, and the factors considered in balancing probative value against the potential for unfair prejudice."  *Id*.  To ensure the probative value of the evidence is balanced against the potential for unfair prejudice, district courts are to make the following considerations:

> In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:
>
> 1.  How clear is it that the defendant committed the prior bad act?
>
> 2.  Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

3

3. Is other evidence available?

4. Is the evidence unnecessarily cumulative?

5. How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.

3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad

4

character than it is of any legitimate inference permitted by Rule 404(b).

> 6.  Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342-43 (quoting *Rigler v. State*, 941 P.2d 734, 737 n.1 (Wyo. 1997)).

[¶9]    A review of the record shows that the district court did not engage in the "shotgun approach" of which we disapproved in *Gleason*. Rather, it rightfully identified the purposes for which the prosecution sought introduction of the evidence and discussed each purpose, citing cases where the same type of evidence was used for the same purposes:

> It is important that the Court identify -- and I have reviewed the case law with regard to the alleged admissible purposes being put forth by the State.

> With regard to motive, it is clear and well settled in Wyoming that threats against a victim can be introduced properly to show motive.

> Also, that the defendant's conduct toward the victim may also be relevant at trial to establish motive, and that the prosecution is permitted to prove the accused's motive to identify the accused as the perpetrator of the charged crime.

> The case law the Court has reviewed and is relying on with regard to motive is *Kenyon v. State*, 96 P.3d 1016, a 2004 case; *Bhutto v. State*, 114 P.3d 1252, also a 2004 case; and *Mitchell v. State*, 865 P.2d 591.

> With regard to intent and malice, the Court is aware that there are both general and specific-intent crimes charged here.

> The case law is also clear with regard to 404(b) evidence as it relates to intent and malice. Uncharged misconduct can be relevant and admissible to prove intent in both general and specific intent cases. That's *Johnson v. State*, 936 P.2d 458, a 1997 case.

5

Also, prior conflicts between the parties, including assault, are properly used to show intent, *Wilson v. State*, at 14 P.3d 912, it's a 2000 case; again, the *Bhutto* case; *Moore v. State*, 80 P.3d 191; a 2003 case; and most recently, *Rolle v. State*, 236 P.3d 259, Wyoming 2010.

With regard to identity, it's clear in Wyoming that evidence of other prior bad acts may be admitted for the purpose of proving identity. Again, that's the *Johnson* case. The *Johnson* case, *Rolle* case, and *Pena v. State*, 780 P.2d 316 a 1989 case.

Finally, with regard to course of conduct, Wyoming case law is clear that evidence of prior assaults may be admissible to establish a course of conduct between the parties as part of intent. And, again, that's the *Moore v. State* case.

[¶10] After explaining why motive, intent, malice, identity, and course of conduct are proper purposes for this type of evidence in this case, the district court went on to explain why it was not going to allow in a significant portion of the prosecution's requested evidence under W.R.E. 404(b). The district court found that the allegations regarding the previous girlfriend were not specific enough to warrant admission into evidence. Further, the district court found that some of the evidence regarding threats against the victim and her family were not offered for a proper purpose and lacked specificity and, thus, were also excluded. Thereafter, the district court analyzed the remaining evidence using all of the factors in *Gleason*. With respect to the proper purposes, the district court found:

First, is the evidence offered for a proper purpose under *Vigil*[?] With the exceptions, as I said, that I've just ruled on, I do find that based upon a review of the elements of the charged offenses, it does appear that the offered evidence is properly used for the identified purposes.

The defendant's motive as well as his intent are clearly at issue in this case. It is unknown to me, but it would appear to the Court that the defendant disputes some, if not all, of the acts alleged.

Evidence of the relationship between [the appellant] and the alleged victim, including the discord and the violence that may have occurred between them, is relevant to the

6

defendant's motive to commit the alleged crimes, and it is also admissible to establish a course of conduct between the parties as part of intent.

Under the circumstances of the case and based upon the case law, the evidence proposed is properly offered for the purpose of showing motive, intent, identity, and absence of mistake, as well as course of conduct.

The record shows the district court engaged in a thoughtful analysis of the purposes for which the prosecution sought to introduce the evidence and carefully weighed the probative value of the evidence against the potential for unfair prejudice.

[¶11] The appellant's primary complaint appears to stem from the fact that the district court identified more than one proper purpose for the admission of the evidence. Clearly, the district court identified several proper purposes for the introduction of the evidence. However, that does not mean it engaged in the "shotgun approach" of simply naming every possible proper purpose. In fact, this Court previously has recognized that the district courts are not required to pinpoint only one proper purpose for the admission of evidence. *Rolle*, 2010 WY 100, ¶ 15, 236 P.3d at 268 n.3; *Sturgis v. State*, 932 P.2d 199, 203 (Wyo. 1997). The district court correctly identified the proper purposes for the admission of the evidence and weighed the evidence in accordance with the *Gleason* factors. The district court's conclusions were reasonable under the circumstances, and we do not find the district court abused its discretion.[2]

### *Did the district court abuse its discretion when it allowed the jury to review a transcript of a telephone recording between the appellant and the victim while the recording was being played at trial?*

[¶12] During its case in chief, the prosecution played a recorded telephone conversation between the appellant and the victim. The jury was provided with a transcript of the conversation to review while the recording was played. The appellant objected to the use of the transcript on the grounds that he did not believe the victim—who was testifying at the time—knew if the transcript was an accurate reflection of the recording and that the

---

[2] Although we do not find the district court abused its discretion in its ultimate conclusion regarding the admission of the evidence under W.R.E. 404(b), we do feel compelled to clarify one of the factors in the *Gleason* analysis that was misapplied here. When determining the probative value of the evidence, the district court must ask whether "other evidence [is] available." *Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342. Here, the district court analyzed whether other evidence of the uncharged misconduct was available. The correct question, however, is whether other evidence of the proper purpose—i.e., motive, intent, identity, etc.—is available. *Mersereau v. State*, 2012 WY 125, ¶ 26, 286 P.3d 97, 110 (Wyo. 2012). If it is, the uncharged misconduct becomes less probative.

members of the jury should form their own opinions about what was being said on the recording. The district court overruled the appellant's objection and informed the jury:

> I would direct that after the recording is played, the transcripts will be collected from the members of the jury. And I would again specifically caution the members of the jury that even though the transcript is being given to you while you listen to the recording, it is only an aid to you in your consideration of the evidence, and you need to rely upon your own hearing and your own perception of this recording in connection with your actual evaluation and use of that evidence.

On appeal, the appellant argues that the district court abused its discretion when it allowed the jury to look at the transcript because there is nothing in the record to indicate the district court considered whether the transcript was reliable and consistent with the actual conversation in the recording.

[¶13] "The admission of evidence, including the admission of transcripts to assist the trier of fact, lies within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Munoz v. State*, 849 P.2d 1299, 1300 (Wyo. 1993). While the transcripts in this case were not admitted into evidence, but only used as an aid, the abuse of discretion standard of review still applies. *See United States v. Jacob*, 377 F.3d 573, 581 (6th Cir. 2004). This Court will not find that an abuse of discretion has occurred, so long as "there exists a legitimate basis for the trial court's ruling." *Foster v. State*, 2010 WY 8, ¶ 14, 224 P.3d 1, 7 (Wyo. 2010) (quoting *Wimbley v. State*, 2009 WY 72, ¶ 10, 208 P.3d 608, 611 (Wyo. 2009)). Further, even if the use of the transcript was error, this Court will only reverse the appellant's conviction if the error was prejudicial. *Reay v. State*, 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo. 2008). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Id*.

[¶14] The appellant argues that the district court abused its discretion when it determined the jury could look at a transcript of the recorded telephone conversation without the district court first making a record as to why the transcript was necessary, accurate, and reliable. With respect to the accuracy and reliability of the transcript, the appellant asserts the district court had a duty to examine the person who prepared the transcript. However, this Court has never required the person who prepared the transcript specifically to testify in order to lay a foundation for the accuracy of a transcript. Instead, this Court has held that, "[w]hen testimony supplied by *either* the transcriber or a participant in the conversation verifies the transcript's accuracy, authentication is satisfied." *Munoz*, 849 P.2d at 1300 (emphasis added). Here, the victim, who was one of the participants in the recorded telephone conversation, testified that she had reviewed

8

the transcript and, to the best of her knowledge, it appeared to be an accurate reflection of the conversation. Thus, the transcript was properly authenticated.

[¶15] Additionally, this Court has recognized that transcripts of a recording can be useful to a jury. *See Crisp v. State*, 944 P.2d 1165, 1168 (Wyo. 1997); *Munoz*, 849 P.2d at 1300. While there is nothing in the record to indicate exactly why the district court believed the transcript would be beneficial to the jury, it is not outside the bounds of reason to believe that it would be. We decline to find the district court abused its discretion in allowing the jury to look at the transcript while it was contemporaneously listening to the recording.

[¶16] It is worth noting that, even if the district court had abused its discretion in allowing the jury to use the transcript, the appellant has failed to demonstrate how the verdict may have been more favorable to him if the transcript had not been used. *See Reay*, 2008 WY 13, ¶ 8, 176 P.3d at 650. The appellant has spent a significant portion of his brief arguing that there is nothing in the record to show the transcript was accurate and reliable; however, at no time in his argument does he ever claim the transcript is inaccurate or unreliable. It is difficult to see how the appellant could be prejudiced by the lack of a record regarding the accuracy of the transcript if the transcript is, in fact, accurate.

### *Was trial counsel ineffective because he requested a continuance and filed a waiver of speedy trial signed by the appellant, contrary to the appellant's desire not to waive his right to a speedy trial?*

[¶17] Approximately two weeks before the appellant's trial was to begin, the prosecution gave notice that it intended to introduce into evidence the recorded telephone conversation between the appellant and the victim. The appellant's counsel objected to the notice and requested the evidence be excluded or, in the alternative, he be granted a continuance of the trial so that he could consult with an expert regarding the recording. The district court held a hearing on the matter and granted the appellant a continuance on the condition that the appellant file a written waiver of his right to speedy trial. The next day, the appellant filed a written waiver. Now, however, the appellant claims he did not want to waive his right to a speedy trial and that he received ineffective assistance of counsel when his trial attorney told the district court the appellant would waive that right and filed a waiver to that effect.

[¶18] When reviewing a claim of ineffective assistance of counsel, we review the record *de novo*. *Mickelson v. State*, 2012 WY 137, ¶ 16, 287 P.3d 750, 755 (Wyo. 2012). In order to prevail on a claim of ineffective assistance of counsel, the appellant "must demonstrate on the record that: 1) counsel's performance was deficient and 2) prejudice resulted." *Jenkins v. State*, 2011 WY 141, ¶ 5, 262 P.3d 552, 555 (Wyo. 2011) (quoting *Dettloff v. State*, 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo. 2007)).

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Hirsch* [*v. State*, 2006 WY 66], ¶ 15, 135 P.3d [586,] 593 [(Wyo. 2006)]. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Under the two-prong standard articulated in *Strickland* [*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)], to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. *Id*. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*., quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. [at 2064].

The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo. 2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id*. A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id*. An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id*.

*Dettloff*, 2007 WY 29, ¶¶ 18-19, 152 P.3d at 382-83. We have also stated that when assailing counsel's assistance, an appellant must provide more than mere speculation or equivocal inferences. *Duke v. State*, 2004 WY 120, ¶ 36, 99

P.3d 928, 943 (Wyo. 2004), *cert. denied*, 544 U.S. 1062, 125
S.Ct. 2513, 161 L.Ed.2d 1113 (2005).

*Jenkins*, 2011 WY 141, ¶ 6, 262 P.3d at 555.

[¶19]  Here, we can readily dispose of the appellant's claim of ineffectiveness due to the lack of a showing of sufficient prejudice.  The appellant makes no argument whatsoever about how the result of the proceedings against him would have been different had his trial counsel not requested and received a continuance of the trial date.  Instead, the entirety of his argument regarding prejudice is that the continuance and waiver of speedy trial "subjected him to further delay, incarceration, and anxiety."  This is an insufficient showing of prejudice and, thus, we find the appellant did not receive ineffective assistance of counsel.

## CONCLUSION

[¶20]  The district court did not abuse its discretion when it determined that testimony of previous violent acts committed by the appellant against the victim was admissible under W.R.E. 404(b).  Further, the district court did not abuse its discretion when it allowed the jury to review a transcript of a recorded telephone conversation between the appellant and the victim while the jury was actively listening to the recording.  Finally, the appellant did not receive ineffective assistance of trial counsel when his counsel requested and was granted a continuance of the trial date so counsel could consult with an expert witness.  Affirmed.