# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 29

### OCTOBER TERM, A.D. 2025

#### March 4, 2026

JACOB ALEXANDER MEYER,

Appellant
(Defendant),

v.                                                             S-25-0138

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
The Honorable Benjamin S. Kirven, Judge

*Representing Appellant:*
Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; Banaz Wadi, Student Director, Prosecution Assistance Program. Argument by Ms. Wadi.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   A jury convicted Jacob Meyer of second-degree sexual assault of a student at Sheridan High School, where Mr. Meyer was employed as an assistant principal.  On appeal, Mr. Meyer alleges the district court erred when it granted a motion in limine related to evidence of contact or perceived attempts by the victim to have contact with Mr. Meyer after the end of the school year.  Mr. Meyer also alleges the district court erred when it admitted irrelevant and prejudicial victim impact testimony.  Finding no error, we affirm.

## ISSUES

[¶2]   Mr. Meyer raises two issues on appeal, which we rephrase as follows:

1.     Did the district court abuse its discretion when it granted the State's motion in limine related to evidence of the victim's contact with or perceived attempts to contact Mr. Meyer at the end of the school year?

2.     Did the district court commit plain error when it admitted victim impact testimony?

## FACTS

[¶3]   Mr. Meyer was employed by Sheridan High School as an assistant principal.  In the fall of 2023, he was thirty-three years old when he met L.J., a senior in high school, at a school activity just before the school year started.  The two began to talk every day because L.J. worked in the front office as a teacher's assistant, near Mr. Meyer's office.  As the semester went on, L.J. began receiving gift cards and notes from Mr. Meyer.

[¶4]   Mr. Meyer eventually gave L.J. his phone number.  The two began texting every day, and their conversations progressed to sharing details about their personal lives.  Mr. Meyer's messages evolved into complimenting L.J.'s physical appearance and how she smelled.

[¶5]   On April 19, 2024, during L.J.'s senior year, Mr. Meyer and L.J. texted each other about making plans that night.[1]  Mr. Meyer knew L.J. was drinking alcohol with her friends, and the text messages led to Mr. Meyer inviting L.J. to his house for "Fun. One time."  Mr. Meyer warned, "You realize if you tell one person we're both f*cked."  Mr. Meyer gave L.J. his address and told her not to park in his driveway and to avoid his neighbors.

---

[1] On this date, L.J. was 18 years old.

[¶6]     L.J., who was intoxicated at the time, arrived at Mr. Meyer's apartment just after 10:30 p.m.  While watching TV, Mr. Meyer and L.J. began kissing and moved to the bedroom where they engaged in oral sex and sexual intercourse twice.  Soon after, L.J. texted her friends to pick her up, and before leaving Mr. Meyer's apartment, he kissed her goodbye and told her he would see her at school on Monday.  Mr. Meyer and L.J. exchanged text messages the next morning, where Mr. Meyer sent text messages that said, "Drained / Get it?"  Mr. Meyer also asked L.J., "We good still?"  She replied, "Why wouldn't we be?"  He responded, "Just paranoia."

[¶7]     A few weeks later, on May 4, 2024, the night of prom, a friend of L.J.'s saw text messages between L.J. and Mr. Meyer and reported to Sheridan High School principal Scott Cleland that L.J. and Mr. Meyer "had a sexual relationship."  Principal Cleland reported the messages to law enforcement.  After a brief investigation by Student Resource Officer Meagan Phillips and the Sheridan Police Department, the State arrested Mr. Meyer and charged him with one count of sexual assault in the second degree, in violation of Wyo. Stat. Ann. § 6-2-303(a)(ix)(2025).[2]  The State alleged Mr. Meyer, an employee of Sheridan High School who was four years older than his victim, inflicted sexual intrusion on L.J., who was a student at the same school.

### Trial Proceedings

[¶8]     Prior to trial, the State filed a motion in limine requesting the district court "prohibit any mention of contact or perceived attempts to have contact between [L.J.] and [Mr. Meyer] since the school year ended in 2024."  The motion explained, "The [d]efense has apprised the [S]tate that L.J. and [Mr. Meyer] have been at the gym at the same time.  It is the defendant's perception that [L.J.] was going to the gym at the same time because he was present.  L.J. disputes this as she was a member of the gym as well."  The State argued any discussion about L.J. going to the same gym as Mr. Meyer was irrelevant to whether a sexual assault occurred on April 19, 2024.

[¶9]     On the first day of trial, the parties argued the motion before jury selection.  Mr. Meyer argued the gym evidence could be relevant for impeachment "in the event that it comes across that she is scared, nervous, not wanting him."  Mr. Meyer argued he could foresee using the gym evidence if L.J. testified she was "scared or felt pressured or … [p]ushed into this."  The district court granted the State's motion, but stated, "if the issue comes up as to [ ] her current state of mind, then we can address that issue in the event that it comes up[.]"  Mr. Meyer's counsel then stated, "What I would foresee, Judge, is I would just ask for a sidebar before I ever approached it and address it."  That never occurred.

---

[2] Wyo. Stat. Ann. § 6-2-303(a)(ix) criminalizes "sexual intrusion" on a victim if the actor is "an employee or volunteer of an elementary or secondary public or private school who, by virtue of the actor's employment or volunteer relationship with the school, has interaction with the victim who is a student or participant in the activities of the school and is more than four (4) years older than the victim."

[¶10] During trial, the jury heard evidence from L.J., two of L.J.'s friends, Principal Cleland, Officer Phillips, Mr. Meyer's ex-girlfriend, and a computer forensic analyst. Also, forty-five pages of text messages between L.J. and Mr. Meyer were admitted at trial. L.J. testified in detail about her interactions with Mr. Meyer, and the night they had sex. She further testified prom was "the worst day of [her] life," and afterward, she did not go to school for two weeks after prom because it was "the most traumatizing thing." She also testified that she was concerned about her mom finding out about what happened with Mr. Meyer. There was no testimony at trial regarding L.J. and Mr. Meyer interacting at the gym after she graduated.

[¶11] The jury found Mr. Meyer guilty of sexual assault in the second degree. The court sentenced him to three to five years in prison, with credit for one hundred five (105) days served. This appeal followed.

## STANDARD OF REVIEW

[¶12] We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Sullivan v. State,* 2025 WY 5, ¶ 19, 561 P.3d 780, 785 (Wyo. 2025) (citing *Munda v. State*, 2023 WY 90, ¶ 21, 535 P.3d 523, 528 (Wyo. 2023)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *State v. Cole*, 2026 WY 19, ¶ 20, -- P.3d -- (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)). "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Klingbeil v. State*, 2021 WY 89, ¶ 38, 492 P.3d 279, 287 (Wyo. 2021) (quoting *King v. State*, 2013 WY 156, ¶ 7, 315 P.3d 639, 643–44 (Wyo. 2013) (quotation omitted)). Even if the evidence was improperly admitted, the appellant bears the burden of establishing the error caused material prejudice. *Sullivan,* ¶ 19, 561 P.3d at 786 (citation modified). To establish material prejudice, the appellant must show a reasonable probability of a more favorable verdict absent the error. *Id.*

[¶13] When no objection is made at trial to evidence challenged on appeal, our review is for plain error. *See Ingersoll v. State*, 2022 WY 74, ¶ 9, 511 P.3d 480, 484 (Wyo. 2022). Plain error is satisfied when an appellant shows (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) the denial of a substantial right resulting in material prejudice. *Id.* Failure to establish each element precludes a finding of plain error. *Klingbeil*, ¶ 40, 492 P.3d at 288 (quoting *Lewis v. State*, 2018 WY 136, ¶ 13, 430 P.3d 774, 777 (Wyo. 2018) (citation omitted)). "Where appropriate, we address the prejudice element of the plain error test first, without addressing whether there has been a violation of a clear and unequivocal rule of law." *Klingbeil*, ¶ 43, 430 P.3d at 288 (quoting *Leners v. State,* 2021 WY 67, ¶ 23, 486 P.3d 1013, 1018 (Wyo. 2021) (citations omitted)).

3

## DISCUSSION

***The district court did not abuse its discretion when it granted the State's Motion in Limine.***

[¶14]  Mr. Meyer first challenges the district court's pretrial ruling granting the State's motion in limine which sought to exclude potential impeachment evidence that L.J. attended Mr. Meyer's gym after her graduation (and after the assault).  He argues the excluded evidence was relevant under Wyoming Rule of Evidence (W.R.E.) 401, not unduly prejudicial under W.R.E. 403, and that excluding the evidence was ultimately prejudicial.

[¶15]  Under W.R.E. 401, evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  W.R.E. 401. Furthermore, this Court has said "evidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Hill v. State*, 2016 WY 27, ¶ 30, 371 P.3d 553, 562 (Wyo. 2016) (quoting *Hernandez v. State,* 976 P.2d 672, 676 (Wyo. 1999)). "Before evidence can be admissible, it must be relevant." *Hill,* ¶ 29, 371 P.3d at 562 (quoting *Thomas v. State,* 2006 WY 34, ¶ 28, 131 P.3d 348, 356 (Wyo. 2006)).

[¶16]  Here, Mr. Meyer argues the gym evidence would have been useful to impeach L.J. if she testified that she was afraid of Mr. Meyer or that she had been "pressured" or "[p]ushed into" having sex with him.  However, L.J. never testified in that manner.  As a result, Mr. Meyer never attempted to introduce the gym evidence at trial, as discussed during the hearing on the motion in limine, likely because L.J. never claimed during her trial testimony that she felt scared or nervous because of Mr. Meyer.  Further, with respect to Mr. Meyer's claimed inability to impeach L.J., the record shows Mr. Meyer extensively cross-examined her and, in fact, did impeach her on other grounds.

[¶17]  In any event, the gym evidence was not relevant because it did not make any fact of consequence to the charged offense more or less probable. *See Gutierrez v. State,* 2020 WY 150, ¶ 12, 477 P.3d 528, 532 (Wyo. 2020) (finding evidence of citizenship was irrelevant and inadmissible when citizenship was not an element of a crime, nor did it make "fact of consequence more or less probable").  The excluded material was irrelevant and collateral to the central issue before the jury, which was whether Mr. Meyer committed sexual intrusion on L.J., for which there was ample evidence to find Mr. Meyer guilty.  Any later decisions or actions by L.J. related to going to the same gym as Mr. Meyer, months after the assault, do not bear on whether or not the assault happened.

4

[¶18] The district court did not abuse its discretion in granting the State's motion to exclude the gym evidence. The district court could have reasonably concluded as it did under the circumstances of the case. Finding no abuse of discretion, we need not consider whether Mr. Meyer was materially prejudiced by the exclusion of the evidence in question. *See Testerman v. State,* 2025 WY 58, ¶ 34, 568 P.3d 1206, 1216 (Wyo. 2025) ("Finding no error, we do not need to consider whether Mr. Testerman was materially prejudiced by the admission of either of these statements.").

***Mr. Meyer was not materially prejudiced by admission of purported victim impact testimony.***

[¶19] In his second argument, Mr. Meyer contends the State introduced improper victim impact testimony at trial when L.J. testified about her negative prom experience, missing school for two weeks, and not wanting her mom to learn about her relationship with Mr. Meyer. Mr. Meyer did not object to this evidence at trial. As a result, our review is for plain error, which requires an appellant show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) the denial of a substantial right resulting in material prejudice. *Ingersoll*, ¶ 9, 511 P.3d at 484.

[¶20] We find this case is one where it is appropriate to "address the prejudice element of the plain error test first, without addressing whether there has been a violation of a clear and unequivocal rule of law." *Klingbeil*, ¶ 43, 492 P.3d at 288 (quoting *Leners,* ¶ 23, 486 P.3d at 1018). We review the entire record to determine prejudice. *Id.*, ¶ 44, 492 P.3d at 289 (quoting *Hathaway v. State*, 2017 WY 92, ¶ 33, 399 P.3d 625, 634-35 (Wyo. 2017)). Importantly, Mr. Meyer must show he suffered material prejudice from the errors he alleges by showing a reasonable probability he would have received a more favorable verdict if those errors were not made. *Id.* In other words, Mr. Meyer must show prejudice under circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play. *See Leners,* ¶ 24, 486 P.3d at 1018 (citation omitted).

[¶21] We have said before the single most significant factor in weighing whether an error was harmful is the strength of the case against the defendant. *Sullivan*, ¶ 34, 561 P.3d at 789 (citation omitted). Other factors that may be considered when determining prejudice are: 1) whether the evidence furnished important corroboration of other testimony; 2) whether it related to a material, consequential fact; 3) whether counsel relied on the evidence in argument; 4) whether the evidence was cumulative; and 5) the effect of any instructions given to the jury. *Id.* (citation modified).

[¶22] Here, Mr. Meyer fails to show any reasonable probability that the verdict would have been more favorable to him had the victim impact testimony been excluded. The State's case against Mr. Meyer was strong, and the evidence against him was overwhelming — particularly the forty-five pages of text messages between him and L.J. In the time leading up to their physical encounter, the following exchange took place:

5

> Mr. Meyer:  Fun. One time.
>           Is that what you want[?]
> LJ:  Is that what you want?
> Mr. Meyer:  Does once work for you[?]
> I do trust you.  I don't want the people or things ahead of us interfered with and believe we're both on the same page about that.  Job, scholarships, friends and community.
>           Is that what you want[?]
> LJ: Yeah[.]
> Mr. Meyer: You realize if you tell one person we're both f*cked[?]
> LJ: I understand[.]
> Mr. Meyer: My life would be ruined and [I] also fear for your relationship with your parents and scholarship[.]  Not trying to scare you off but making this as real as [I] can[.]
> LJ:  OK. Understood.
> Mr. Meyer:  Tomorrow? Since you're drinking tonight?
> LJ:  Nah tonight.
> Mr. Meyer:  How will that work[?]
>           You'll be drinking[.]  Not good[.]
>           What time[?]
>           ?
> LJ:  When I'm hammered[.]
> Mr. Meyer: That's not good[.]
> LJ:  It's the only way[.]

Then, the day after, the text messages were explicit that the two had sexual intercourse:

> Mr. Meyer: I didn't even make you finish[.]
> LJ: You did enough[.]
> Mr. Meyer: YOU did more than enough –
>     How are you feeling today?
> LJ: Great -You?
> Mr. Meyer: Drained – Get it?
> LJ: Yes. I did.

[¶23]   The jury also heard direct testimony from L.J. that corroborated those text messages. L.J. testified in part,

> Prosecutor: So when he asked you, "Fun. One time," you believed that was about sex? Is that what you said?
>     LJ: Yeah

…

LJ:  And then we get into his bedroom … and he pulled [my clothes off].  And he prompts me to give him oral sex, and I do.  And – which later turned into oral sex for me.

Prosecutor: And then you did – did he go ahead and –

LJ: Yes.  Have sex.

Prosecutor: Did he ejaculate?

LJ: Yes.

LJ: … [W]e agreed we would go again. And that – he prompted me to perform oral sex again … [a]nd then he inserted his penis into my vagina again … and then that was the end of that.

[¶24]  Other testimony from L.J.'s friends and Officer Phillips also corroborated L.J.'s testimony about having sexual intercourse with Mr. Meyer.  Two of L.J.'s friends testified that L.J. gave details about what happened that were "sexual in nature" and that L.J. and Mr. Meyer had sex on April 19, 2024.  Officer Phillips testified, "… I asked her if — so I could say that there was a basis — she understood what sex was.  I asked her if that is what happened, and she confirmed that that is what happened."

[¶25]  Regarding the perceived victim impact testimony with which Mr. Meyer takes issue, L.J. testified about prom being the "worst day of her life," that she did not return to school for two weeks after prom, and that she worried about her mom "finding out [about the assault]."  The testimony was brief and arose in the course of describing the aftermath of the assault.  The defense even cross-examined L.J. about prom night and going back to school.  And although the State mentioned those statements in closing, they were not emphasized by the State as independent proof of Mr. Meyer's guilt — they did not need to be, as there was already strong evidence of Mr. Meyer's sexual intrusion on L.J.  In light of the overwhelming evidence of the sexual assault and the limited role the complained-of testimony played in the State's case, there is no reasonable probability that the outcome of the trial would have been more favorable to Mr. Meyer had the testimony been excluded.  Accordingly, any error did not result in material prejudice and does not warrant reversal.

## CONCLUSION

[¶26]  The district court did not abuse its discretion when it granted the State's motion in limine, nor was Mr. Meyer materially prejudiced when the district court admitted victim impact testimony.  Affirmed.