2011 WY 141

**Bobby Jack JENKINS, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

No. S–11–0003.

Supreme Court of Wyoming.

Oct. 12, 2011.

Representing Petitioner: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel. Argument by Ms. Olson.

Representing Respondent: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Jessica Y. Frint, Student Director, and Gregg Bonazinga, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Bonazinga.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]   The petitioner, Bobby Jack Jenkins, was charged with misdemeanor animal cruelty after a horse he owned was discovered in very dire physical condition. He was con- victed in circuit court and the district court affirmed that conviction. He now brings the matter to this Court on a petition for review, asserting that his trial counsel was ineffective and therefore the decision should be reversed. Finding no prejudicial error, we affirm.

## ISSUES

[¶ 2]   1.   Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object to testimony and argument regarding the arrest and incarceration of both the petitioner and his brother?

2.   Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object when the prosecutor elicited improper witness comment on another witness's testimony?

3.   Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object to the prosecutor's questions relating to irrelevant evidence?

## FACTS

[¶ 3]   On August 15, 2009, L.N. went with the petitioner's mother to an uninhabited ranch in Goshen County to look at a pickup truck that was for sale. At the ranch, L.N. looked over some horses that were also for sale. He was aghast to find a paint filly with a halter ingrown into her head, between her nostrils and eyes. Upon L.N.'s return home, he described to his wife what he had seen and she insisted that they return to the ranch to care for the filly, which they did. L.N. separated the filly and her mother from the other horses, roped the filly, and cut the halter from its head. The filly's breathing was labored and pus ran from its nose. When L.N. cut the halter to remove it, blood gushed from the horse's head and bone was exposed. L.N. and his wife took the mare and the filly to a veterinarian and called the sheriff's office. When the petitioner arrived at L.N.'s house the following day to pick up the horses, he was arrested for animal cruelty.

[¶ 4]   A circuit court jury found the petitioner guilty of animal cruelty, a misdemeanor, in violation of Wyo. Stat. Ann. § 6–3–

203(b) (LexisNexis 2011). The petitioner appealed his conviction to the district court, where the conviction was affirmed. This Court granted a petition for writ of review. Finding no error appearing in the record, we also affirm.[1] *See* W.R.A.P. 13.08.

## STANDARD OF REVIEW

■■■■ [¶ 5] Our standard of review when considering claims of ineffective assistance of counsel is well known to Wyoming litigants:

An appellant claiming ineffective assistance of counsel must demonstrate on the record that: 1) counsel's performance was deficient and 2) prejudice resulted. *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 594 (Wyo.2006), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, [2064], 80 L.Ed.2d 674 (1984). Both components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. [at 2070]. Our review, therefore, is *de novo*. *United States v. Owens*, 882 F.2d 1493, fn. 16 (10th Cir.1989).

*Dettloff v. State*, 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo.2007).

## DISCUSSION

■■■■ [¶ 6] The petitioner points to three separate instances in which he alleges his trial counsel was ineffective. Before addressing these issues, however, we will articulate certain general principles of law that guide our analysis and govern the petitioner's claims.

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Hirsch*, ¶ 15, 135 P.3d at 593. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Under the two-prong standard articulated in *Strickland*

[*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)], to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. [at 2064].

The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo.2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id.* A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id.*

*Dettloff*, 2007 WY 29, ¶¶ 18–19, 152 P.3d at 382–83. We have also stated that when assailing counsel's assistance, an appellant must provide more than mere speculation or equivocal inferences. *Duke v. State*, 2004 WY 120, ¶ 36, 99 P.3d 928, 943 (Wyo.2004), *cert. denied*, 544 U.S. 1062, 125 S.Ct. 2513, 161 L.Ed.2d 1113 (2005).

### *Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object to testimony and argument regarding the arrest and incarceration of both the petitioner and his brother?*

■■■ [¶ 7] The petitioner's first ineffective assistance claim involves his trial counsel's failure to keep out of evidence com-

---

1. Although a citation was issued, the petitioner was arrested. No other charging document was ever filed, and the petitioner went to trial solely on the citation. The record does not reflect that

probable cause was established by affidavit or sworn testimony at the petitioner's initial appearance, but no issue has been raised in this regard. *See* W.R.Cr.P. 5(a).

ments about his arrest and his brother's incarceration. Regarding his arrest, the petitioner complains that several witnesses—his mother, L.N., and the Livestock Board investigator—all mentioned his arrest in some form during their testimony. L.N. testified, "When [the petitioner] showed up to take the horse, he and his significant other, I guess you'd call it, they showed up with a pickup and a trailer, and he showed up to pick them up. Well, he wound up getting handcuffed, arrested and hauled off." The Livestock Board investigator testified:

Q. So did you as part of your investigation make any attempt to contact [the petitioner]?

A. Yes, we did find out where he was—where he was at.

Q. And did you go to that location and speak with him?

A. Yes, sir.

Q. You and [another investigator]?

A. Yes.

Q. Okay. Where was that?

A. The detention center at Goshen County Sheriff's Office.

The prosecutor, after questioning the investigator about the contents of his interview with the petitioner, stated, "All right. Did that fairly conclude what you spoke of in your interview at the jail with [the petitioner]?" Also, the prosecutor referred to the Livestock Board investigator's interview with the petitioner during his opening statement, "So once [L.N.] notified the sheriff's office, the animal was taken to the veterinarian, then the Livestock Board was notified, and they conducted an investigation. As part of their investigation they interviewed the defendant while he was incarcerated at the Goshen County Detention Facility. . . ." The petitioner's mother, when being questioned about the order of events stated, "I didn't. Wait a minute. I don't think I saw him, not till he was arrested." Finally, the prosecutor mentioned the petitioner's incarceration in his closing argument when he said,

When did [the petitioner's] brother Pete thing come about? I think the first mention of [it] was when [the Animal Board investigators] went down and interviewed on the 21st, came up here rather and interviewed him in the jail, then all of a sudden there's talk of brother Pete.

. . . .

Did [the petitioner] simply make up this story of Pete supposedly taking care of the horses? Well, we heard him change one story. When [the Animal Board investigators] talked to—talked to him in the jail, they said, "How long did you have the halter on there?"

■■■■■ [¶ 8] Citing W.R.E. 402[2], the petitioner asserts that his trial counsel should have objected to the above-quoted testimony because it was irrelevant. The relevance and admissibility of the statements, however, are immaterial inasmuch as we can discern no material prejudice arising from the statements. *Dettloff*, 2007 WY 29, ¶ 19, 152 P.3d at 382 ("An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice."). "Indeed, 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo.2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984)).

To show prejudice, Appellant must prove that "counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." [*Pendleton v. State*, 2008 WY 36, ¶ 20, 180 P.3d 212, 219 (Wyo.2008)]. Stated differently, prejudice means that there is "a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different." *Id.* at ¶ 21, 180 P.3d at 219.

*Montez v. State*, 2009 WY 17, ¶ 3, 201 P.3d 434, 436 (Wyo.2009). As noted above, it is the petitioner's burden to show prejudice. See *supra* ¶ 6.

2. W.R.E. 402 provides: "All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible."

[¶ 9]   The petitioner points to no specific prejudicial effect arising from these statements, but only makes this general assertion: "Instead of a fair assessment of [the petitioner], however the jury was presented with the idea of [sic] that he was the kind of person who was 'hauled off in handcuffs' and that he came from a family of the same ilk." This vague assertion, without more, is simply inadequate to show a reasonable probability that the result of the proceedings would have been different if not for the admission of those statements. In *Foster v. State*, 2010 WY 8, 224 P.3d 1 (Wyo.2010), finding no prejudice arising from testimony that the defendant was currently an inmate in jail, we said:

> By the nature of the case, the jury was aware that the appellant was charged with eleven drug-related crimes. Surely, it was not a big surprise to the jury to find that the appellant had been in jail as a result. We will not presume prejudice, and we therefore cannot say that the district court abused its discretion in admitting this testimony.

*Id.* at ¶ 25, at 12.

[¶ 10]   In the present case, it is apparent that the references to the petitioner's arrest and incarceration were made in passing and as a means of providing context and foundation for other testimony. There was no undue emphasis placed on the petitioner's arrest or incarceration, and there is no indication that the prosecution elicited or attempted to use the testimony for any substantive purpose, such as to impeach the petitioner's credibility or for another purpose impermissible under W.R.E. 404(b).[3] As discussed in *Foster*, it is doubtful that the jury would have been surprised to hear that the petitioner was arrested for the crime for which he was being tried, and that he was interviewed about that crime while in a detention facility. Finally, we find that any prejudice that might have resulted would have been mitigated by the instruction advising the jury that: "Citation in this case is only a formal charge and is not to be considered evidence of guilt on the part of the [petitioner]. Nothing is to be taken by implication against him." We conclude that the petitioner failed to show material prejudice, and as a result failed to show ineffective assistance.

■   [¶ 11]   We will briefly discuss the petitioner's claim that ineffective assistance was rendered when his trial counsel failed to object to his brother testifying in a striped prison suit. The petitioner's brother was called to the stand and the following colloquy occurred:

Q.   .... Could you tell the ladies and gentlemen of the jury your name, please.

A.   My name is Paul A. Jenkins.

Q.   And you were a resident at one time of Goshen County?

A.   Yes.

Q.   Did you grow up here?

A.   Yes.

Q.   Are you brother to [the petitioner]?

A.   Yes.

Q.   And, of course, you're Patsy Shimic's son?

A.   Yes.

Q.   I understand that you're in a striped jumpsuit there because you didn't pay a fine in Goshen County or—

A.   No, I'm in—I'm in Sterling, Colorado now.

Q.   Okay.

A.   And I got arrested for domestic violence.

Q.   Okay. Speak up so everybody can hear you. You said domestic violence?

A.   Yes.

---

3.   W.R.E. 404(b) provides:
   *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Q. Okay. When was the last time prior to now that you were in Goshen County, Pete?

[¶ 12] The petitioner's sole defense at trial was that he had asked his brother to care for the horses. The petitioner's brother testified on behalf of the State and directly denied the petitioner's contention that the brother had agreed to care for the petitioner's horse. Inasmuch as the brother's testimony was directly adverse to the petitioner's defense, we find it to be a reasonable tactical choice not to object to the brother's prison attire and allow any resulting adverse inferences about the brother's credibility. We have said that "[t]he burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy." *Dudley v. State,* 951 P.2d 1176, 1181 (Wyo.1998) (quoting *Johnson v. State,* 936 P.2d 458, 467 (Wyo. 1997)). The petitioner fails to show how allowing an adverse witness to testify in prison attire is not sound trial strategy, or how he was prejudiced by such.

***Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object when the prosecutor elicited improper witness comment on another witness's testimony?***

[¶ 13] The petitioner's next claim of ineffective assistance arises from his counsel's failure to object to prosecutorial misconduct. Specifically, the petitioner argues that the prosecutor invited witnesses to engage in improper commentary on another witness's credibility. The petitioner points to the following exchange between the prosecutor and the petitioner's mother, wherein the prosecutor questioned the mother about a claim by the petitioner's then-girlfriend that the petitioner called home every day to check on the horses.

Q. All right. Now, I see a reference in the report indicating that you received calls every day from [the petitioner] asking you to have [the petitioner's brother] remove the horse's halter.

A. That's not true, no.

Q. All right. And if those were attributed to [the petitioner's girlfriend], you'd say that that's not true?

A. No, it's not. They didn't call me every day.

Later in the direct examination, the prosecutor again questioned the petitioner's mother about the phone calls: "And so if [the petitioner's girlfriend] said she listened to [the petitioner] while he used her phone to call every day and talk to you about the halter, just not the case?" To which the petitioner's mother responded, "That's a lie." The petitioner alleges that the prosecutor also attempted to get him to comment on [his girlfriend's] credibility, saying, "If [your girlfriend] told the Livestock Board that she used—that you used her cell phone every day to have [your brother] remove the halter from the filly, would she be making that up?" To which the petitioner responded, "She might have made an error here."

[¶ 14] It is clearly "error and misconduct for the prosecutor to cross-examine a defendant using the 'lying' or 'mistaken' technique (*i.e.* well, then, if 'so-and-so' said 'such-and-such,' was he 'mistaken' or 'lying?')." *Beaugureau v. State,* 2002 WY 160, ¶ 17, 56 P.3d 626, 635–36 (Wyo.2002). Such questions "invade the province of the jury, create a risk that the jury may conclude that, in order to acquit the defendant, it must find that the other witness lied, and distort the state's burden of proof." *Id.* at ¶ 17, at 636 (quoting *State v. Stevenson,* 70 Conn.App. 29, 797 A.2d 1, 14 (2002)). If a prosecutor merely asks what another witness had to say, and then allows the jury to draw its own conclusions, the question is not objectionable. *Beaugureau,* 2002 WY 160, ¶ 17, 56 P.3d at 636.

[¶ 15] The State concedes, and we agree, that the prosecutor's questioning here resulted in misconduct. Our task, then, is to determine whether prejudice resulted from the prosecutor's misconduct.

To evaluate the prejudice of improper "were-they-lying" questions, courts weigh several factors: 1) the severity and pervasiveness of the misconduct; 2) the significance of the misconduct to the central

issues in the case; 3) the strength of the State's evidence; 4) the use of cautionary instructions or other curative measures; and 5) the extent to which the defense invited the misconduct.

*Talley v. State,* 2007 WY 37, ¶ 16, 153 P.3d 256, 262 (Wyo.2007). When we apply these factors to the facts here, we cannot find material prejudice.

[¶ 16] Regarding the first factor—the severity and pervasiveness of the misconduct—we have refused to find prejudice where the questioning was very brief and the prosecutor did not emphasize the responses in closing argument. *Schreibvogel v. State,* 2010 WY 45, ¶ 42, 228 P.3d 874, 888 (Wyo.2010); *Talley,* 2007 WY 37, ¶ 16, 153 P.3d at 262. Moreover, where the other factors weigh against prejudice, we have refused to reverse, even when "[t]he prosecutor asked [the defendant] several times whether or not she believed that other witnesses were lying if they contradicted her." *Beaugureau,* 2002 WY 160, ¶ 15, 56 P.3d at 633. Given the brevity and lack of emphasis placed on the questions here, we cannot say that the misconduct here was particularly pervasive or severe.

[¶ 17] We turn to the second factor: the significance of the misconduct to the central issues in the case. The central issue was whether the petitioner's conduct resulted in "cruelty to animals" as defined in Wyo. Stat. Ann. § 6–3–203(b) (LexisNexis 2011).[4] To establish this, the prosecutor had to show that the petitioner had charge and custody of the horse and that he failed to provide the horse with appropriate care when it suffered from immediate, obvious, and serious illness or injury. The prosecutor's misconduct (asking petitioner's mother whether the petitioner's girlfriend was lying about the petitioner calling every day) touched, at least peripherally, on this issue. However, we cannot say that this misconduct had a significant impact on the central issue in the case. Even if the jury had heard the girlfriend's testimony,

untainted by the prosecutor's inappropriate questioning, it still could reasonably have concluded, based on the evidence presented, that the petitioner was guilty of "cruelty to animals" as defined in the statute.

[¶ 18] The next factor requires us to consider the strength of the State's evidence in weighing the prejudicial impact of the misconduct. The evidence clearly showed, and it was virtually undisputed, that the petitioner owned the horse and that he was ultimately responsible for her care. There was also considerable evidence that the petitioner neglected that duty, including the testimony of L.N., the petitioner's mother and brother, the Board of Livestock investigator, and the veterinarian who treated the horse. Additionally, the State presented photographic evidence showing the horse's condition. We find that the quantum and quality of the State's evidence cuts against the petitioner's claim of prejudice.

[¶ 19] Regarding the next factor—the use of cautionary instructions or other curative measures—no objection was lodged, and thus no curative measure was taken or instruction given. However, the jury instructions, given before opening statements and again prior to deliberation, did advise as follows: "[I]t is the exclusive province of the Jury to weigh and consider all evidence which is presented to it; to determine the credibility of all witnesses who testify before you, and from such evidence and testimony, to determine the issues of fact in this case[.]" and "[t]he Jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony." Any prejudice that may have resulted from the prosecutor's misconduct would have been ameliorated by these instructions, which instructions we presume juries follow. *See, e.g., Janpol v. State,* 2008 WY 21, ¶ 24, 178 P.3d 396, 405 (Wyo.2008); *Brown v. State,* 953 P.2d 1170, 1177 (Wyo. 1998); *Rubio v. State,* 939 P.2d 238, 243 (Wyo.1997); and *Burke v. State,* 746 P.2d 852, 857 (Wyo.1987).

---

4. The petitioner was convicted under Wyo. Stat. Ann. § 6–3–203(b), which statute provides:

   A person commits cruelty to animals if he has the charge and custody of any animal and unnecessarily fails to provide it with the prop-

   er food, drink or protection from the weather, or cruelly abandons the animal, or in the case of immediate, obvious, serious illness or injury, fails to provide the animal with appropriate care.

[¶ 20] Regarding the final factor, although he did not invite the misconduct, the petitioner may have otherwise mitigated the potential prejudicial impact when he stated that his girlfriend "might have made an error" in her testimony that he called his mother every day to check on the horses.

[¶ 21] The petitioner failed to meet his burden of showing that he was prejudiced by the prosecutor's misconduct. As a result, we cannot say that he was prejudiced by his counsel's failure to object to the improper questions.

*Was the petitioner denied effective assistance of counsel as a result of trial counsel's failure to object to the prosecutor's questions relating to irrelevant evidence?*

[¶ 22] In this final issue, the petitioner claims that he was materially prejudiced by his attorney's failure to object to the prosecutor's questions about irrelevant facts. The petitioner points to two specific instances in which he argues irrelevant testimony was elicited. The first involved questions by the prosecutor about the condition of other horses and the land where all the horses were kept.

Q. All right. And the condition of the one horse you've described that you took the halter off, the condition of the other horses?

A. Good to fair maybe. The—their hooves were extremely long.

Q. What do you mean by that?

A. Well, they're—the ground they were on is fairly soft, so the hooves naturally chip away, and there was no way that these hooves were getting chipped away. The ground was too soft where they were at.

Q. Does that require—

A. Trimming.

Q. Okay. Trimming.

A. Yes, a horse farrier.

Q. All right. Other than that, though, pretty good?

A. They could've used some worming because they were ribby.

Q. They were ribby?

A. Their ribs were showing.

Q. Okay. And anything else? Is that about it?

A. Some doctoring, but like I said, the stud had some pretty bad cuts on his right rear leg.

Q. Uh-huh.

A. And it looked like from some wire or—I don't know what, but it was cut up pretty bad. The other colt filly had a really bad hernia.

[DEFENSE COUNSEL]: Your Honor, I'm going to object that this is irrelevant to the case, what the condition of the other horses was.

THE COURT: Mr. [Prosecutor].

[PROSECUTOR]: I—I don't have to explore any further, Your Honor. I will leave it at that.

THE COURT: Sustain the objection.

Additionally, the prosecutor asked the petitioner's girlfriend, "Isn't it true that citizens complained because the manure was about a foot deep in the 30–by–40 area that there were no windbreaks or any kind of shelters for the horse, that they were asked to be removed?" To which the girlfriend responded, "No, that has nothing to do with it." The petitioner argues that because his cruelty to animals charge related only to the horse with the halter growing into her face, any testimony about the condition of other horses and land where the horses were located was irrelevant.

[¶ 23] The other testimony to which the petitioner points as irrelevant and prejudicial came from the petitioner's brother. The prosecutor was questioning the brother about the extent of the petitioner's communication to the brother about the horses.

A. I stopped at my mom's, and my brother showed up there, and then it all come [sic] out in the open that he was staying out there at that ranch and had put five horses out there.

Q. All right. Now, you say he was staying out there. Was he staying out there during some of the time when you were here?

A. No. He left as soon as I showed up.

Q. And that would've been around the 1st of July?

A. Or whenever—yeah, somewhere around there.

Q. Do you know why he left?

A. No, not really. All I know is that he—when me and my girlfriend showed up here, he—we got—my mom got a phone call to say come out here and pick him up because he had been stopped by a highway patrolman and got a ticket, and then so my girlfriend and my mom went out there and drove him back into town, and that was the first and last time I seen him.

Q. All right. Now, did you have any conversation with your brother during the short time that you saw him?

A. Just briefly.

Q. What kind of conversation?

A. It had to do with something about that "I don't have a driver's license" and stuff, that, you know, he said, "It's a shame that I lost my license for a long time" and just mediocre stuff, you know.

Q. Anything at all about the horses, [ ]?

A. No. No.

Q. Did you talk at all about the five horses that were out there that he had just brought in?

A. No.

Q. Did he ever ask you to take care of those horses?

A. No.

The petitioner asserts that his trial counsel should have objected to the reference to his speeding ticket and loss of license asserting that such evidence was irrelevant and inadmissible prior misconduct under W.R.E. 404(b).

[¶ 24] We will again focus our analysis of the petitioner's ineffective assistance claim on the question of whether material prejudice arose from the alleged errors. We need not address the propriety of the admitted testimony because we find that the petitioner has not met his burden of proving he was prejudiced thereby. His prejudice argument consists solely of a single sentence, concluding that "[h]ad defense counsel assertively advocated for [the petitioner], there is more

than a 'reasonable possibility' that the outcome of the trial may have been different." He does not discuss any specific prejudice arising from the admission of the above-quoted testimony and makes no attempt to explain, in light of the facts of the case, how the challenged statements adversely impacted his trial and, ultimately, the jury's verdict. The petitioner's assertion is utterly inadequate to satisfy his burden of showing material prejudice arising from the alleged ineffective assistance. *See Grady v. State*, 2008 WY 144, ¶ 38, 197 P.3d 722, 734–35 (Wyo. 2008); *Callen v. State*, 2008 WY 107, ¶ 22, 192 P.3d 137, 145 (Wyo.2008); *Doherty v. State*, 2006 WY 39, ¶ 23, 131 P.3d 963, 971 (Wyo.2006); *Bhutto v. State*, 2005 WY 78, ¶ 44, 114 P.3d 1252, 1268 (Wyo.2005).

## CONCLUSION

[¶ 25] The petitioner has failed to show that he was materially prejudiced by the arrest and incarceration testimony elicited, the prosecutor's improper questioning of a witness about the credibility of another witness, or the admission of the allegedly irrelevant testimony about the condition of other horses and the petitioner's speeding ticket. Given the reasons set forth above, we affirm the order entered by the district court affirming the judgment and sentence of the circuit court.