# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 66

APRIL TERM, A.D. 2014

*May 28, 2014*

WILLIAM LANE MCGARVEY,

**Appellant**
**(Defendant),**

**v.**

S-13-0124

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Patricia L. Bennett, Assistant Appellate Counsel.  Argument by Ms. Bennett.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Darrell D. Jackson, Faculty Director, David E. Singleton, Student Director, and Eric B. Limegrover, Student Intern, of the Prosecution Assistance Program.  Argument by Mr. Limegrover.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]    Appellant William McGarvey was convicted of first degree sexual assault for physically forcing a young woman to perform oral sex on him.  On appeal, he alleges that his attorney was ineffective.  We affirm.

### ISSUE

[¶2]    McGarvey asserts that his counsel's performance was constitutionally ineffective in the three following respects:

1.    Counsel sought to introduce evidence under Wyoming's rape shield statute, Wyo. Stat. Ann. § 6-2-312 (LexisNexis 2013), without educating himself about the proper application of that statute and the meaning of DNA evidence gathered by the State.

2.    Counsel failed to investigate how much alcohol had been served to McGarvey before an interview with law enforcement.

3.    Counsel failed to object to the prosecutor's misstatement of law during her rebuttal closing argument.

We must decide whether any of these claims are meritorious based on the record before us.

### FACTS[1]

[¶3]    Two days after Christmas of 2010, TM and three of her female friends went drinking in Rock Springs.  After spending a few hours at Bomber's Sports Bar, two of the young ladies decided to go home and drove off in TM's car.  TM and her remaining friend SS left Bomber's and went to the Astro Lounge.  As closing time neared, TM and SS obtained a ride to SS's home with Appellant McGarvey.  They did not know him, but he had been at both bars and appeared to know some of the patrons the women knew, and he also told SS that he knew her mother.  Once they arrived at SS's apartment, TM asked McGarvey to drive her to Reliance, approximately five miles from Rock Springs, because she wanted to see a former boyfriend.  He agreed.

[¶4]    McGarvey propositioned TM twice on the way to Reliance, asking her both times to give him "head," meaning to perform fellatio on him.  She refused.  He then parked his car after reaching Reliance, exposed his penis, pulled her head into his lap by her hair,

---

[1] For efficiency and clarity, a number of isolated facts pertinent to McGarvey's claims will be set out in the Discussion section below in relation to the specific issues to which they pertain.

1

punched her on the top of her head, and forced her to perform oral sex. After that, he managed to get TM's clothes off, tearing her panties in the process, and despite her protests tried to have intercourse with her in the front passenger seat. Afterward he drove her through a mobile home park until she asked him to stop at a trailer where a friend of hers lived with his parents and sister. Naked and clutching her clothes, she knocked on the front door and called her friend's name.

[¶5]    Her friend Joshua Bowles opened the door and encountered the sobbing, shaking, and visibly terrified TM, who immediately told him she had just been raped. Bowles called the Sweetwater County Sheriff's office while his sister, Chantayne, helped TM dress. Because TM no longer had her panties, Ms. Bowles gave her a new pair, which was still in the package. She noted that TM appeared to have hair pulled out of her scalp. A deputy briefly interviewed TM and the Bowles at the trailer, after which TM was transported by ambulance to the Rock Springs hospital. There she again explained what had happened to a sheriff's detective, and biological evidence was collected from her vagina and the panties given to her by Ms. Bowles.

[¶6]    By mid-morning of December 28, detectives had identified McGarvey as the man who had given TM and SS a ride, and they began looking for him at his home and several of his customary haunts. By early afternoon they discovered him standing beside his vehicle at Joe's Liquor. The car had not been there when the detectives looked for it thirty minutes earlier.

[¶7]    McGarvey was asked if he would agree to an interview. He consented and followed the detectives to the sheriff's office in his vehicle. During the interview, McGarvey admitted that he had engaged in sexual acts with TM in Reliance and that he had forced himself upon her. He consented to a search of his home and car and agreed to have biological evidence collected. He was not arrested at the time.

[¶8]    Two days after the interview, McGarvey was arrested and charged with two counts of first-degree sexual assault, one for forcing TM to perform oral sex on him, and one for forcing her to engage in intercourse. Wyo. Stat. Ann. § 6-2-302(a)(i).[2]

---

[2] That statute provides as follows:

> (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
>
> (i)    The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement[.]

Wyo. Stat. Ann. § 6-2-302(a)(i) (LexisNexis 2013). The penalty for first degree sexual assault is not less than 5 nor more than 50 years incarceration and fines of up to $10,000. Wyo. Stat. Ann. § 6-2-306(a)(i) and 6-10-102 (LexisNexis 2013).

McGarvey eventually entered into a plea agreement with the State and on May 12, 2011, pled guilty to the charge relating to the forced oral sex. He appealed to this Court from the judgment and sentence entered on that plea. While the appeal was pending, he moved the district court for leave to withdraw his plea. The district court granted his motion, McGarvey voluntarily dismissed his appeal, and a new attorney was assigned to represent him.

[¶9] New counsel filed a motion to suppress the statements McGarvey made during his interview because he received no *Miranda* warnings until ten to eleven minutes into it. He also filed a motion supported by his affidavit, seeking permission to introduce certain evidence of TM's sexual conduct under Wyo. Stat. Ann. § 6-2-312, the rape shield statute. He had gleaned from police and lab reports that SS saw TM sitting with a man in a car with her pants down to mid-thigh shortly after she arrived at the Astro. DNA from seminal fluid found inside TM was not identified as McGarvey's, and he came to the conclusion that it came from some other man, although TM denied that she had had sex for four or five days prior to her encounter with McGarvey. Counsel contended this evidence suggested that TM might have had sex with someone other than McGarvey on the evening in question, thereby giving her a motive to lie about what had occurred in order to conceal consensual sexual conduct from her current boyfriend.

[¶10] Following a series of hearings, the district court granted McGarvey's suppression motion with respect to the portion of his interview that preceded the administration of *Miranda* warnings. Although the court found the testimony of the sheriff's deputies and detectives as to what occurred in the interview to be more consistent and credible than McGarvey's, it concluded that he was in custody from the beginning of the interview, and should have been given those warnings. As for the proposed § 6-2-312 evidence, the court found that the motion and supporting affidavit did not establish that the proffered evidence required a hearing. The court concluded that the evidence had not been shown to be arguably relevant and that it would be improper to admit it.[3]

[¶11] On October 26, 2012, a jury returned a verdict finding McGarvey guilty of forcing TM to give him oral sex, but acquitted him of forcibly having intercourse with her. The district court sentenced him to imprisonment for a term of fourteen to eighteen years, and he timely appealed from the court's judgment and sentence.

## STANDARD OF REVIEW

[¶12] An appellant claiming that his attorney provided ineffective assistance must demonstrate from the record some deficiency in counsel's performance that prejudiced him. Because examining both aspects of his proof raises mixed questions of law and fact,

---

[3] McGarvey does not challenge the district court's findings, conclusions, or ultimate rulings on these points in this appeal.

we review such claims *de novo*. *Moore v. State*, 2013 WY 120, ¶ 13, 309 P.3d 1242, 1245 (Wyo. 2013); *Jenkins v. State*, 2011 WY 141, ¶ 5, 262 P.3d 552, 555 (Wyo. 2011); *Dettloft v. State*, 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo. 2007); *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (both components of ineffectiveness inquiry involve mixed questions of law and fact); *United States v. Owens*, 882 F.2d 1493, 1501 n.16 (10th Cir. 1989).

## DISCUSSION

[¶13]  To prevail on his claims, McGarvey must prove that his counsel did not function as a reasonably competent attorney would have in some particular respect. There must be proof of deficient performance, and mere speculation or equivocal inferences will not suffice.  Proof of defective performance must overcome the strong presumption that the attorney rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. *Jenkins*, ¶ 6, 262 P.3d at 555; *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 593 (Wyo. 2006); *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

[¶14]  We do not evaluate counsel's efforts in hindsight.  Rather, we evaluate them in light of the surrounding circumstances from counsel's perspective at the time of the challenged acts or omissions, and we determine whether the choices made could be considered sound trial strategy. *Robison v. State*, 2011 WY 4, ¶ 7, 246 P.3d 259, 263 (Wyo. 2011); *Sincock v. State*, 2003 WY 115, ¶ 35, 76 P.3d 323, 336 (Wyo. 2003). Appellant must also prove that he was prejudiced by his attorney's deficient performance, and must therefore demonstrate that, absent the alleged deficiency, it is reasonably probable that the result of his trial would have been more favorable to him. *Jenkins*, ¶ 6, 262 P.3d at 555; *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 662-63 (Wyo. 2006).

[¶15] An appellant's failure to make the required showing of either deficient performance or sufficient prejudice will defeat his ineffectiveness claim.  Thus, we may reject such a claim solely on the ground that the record reveals an insufficient probability of prejudice. *Moore*, ¶ 14, 309 P.3d at 1245; *Jenkins*, ¶ 6, 262 P.3d at 555; *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

**The Motion to Allow Evidence Arguably Covered by the Rape Shield Law**

[¶16]  As already noted, McGarvey's attorney filed a motion seeking leave to introduce evidence that SS saw TM in a car with a man with her pants down to mid-thigh hours before she left for Reliance with McGarvey, and that DNA from seminal fluid found inside TM was not McGarvey's, even though TM claimed she had not had sex for four or five days prior to her encounter with him.  Counsel argued that this evidence was relevant to prove that TM had sex with someone else before that encounter, and that she consequently had a motive to lie about McGarvey forcing her to have sex.  The motive

was evidently to attempt to conceal the fact that she had a consensual sexual encounter from her current boyfriend.  McGarvey also claims that his attorney failed to adequately educate himself about the proper application of the rape shield statute and the meaning of DNA evidence gathered by the State.  He argues that if counsel had provided effective assistance in this regard, the evidence would have been admitted, and he would probably have been acquitted of both charges.  Therefore, he argues, he was prejudiced by his attorney's less-than-effective representation.

[¶17]  McGarvey's attorney had to persuade the trial judge that the disputed evidence could properly be admitted under Wyoming's rape shield statute, Wyo. Stat. Ann. § 6-2-312.  That statute requires a defendant who wishes to introduce evidence of the victim's prior sexual conduct, or reputation or opinion evidence as to her character, to file a motion with the trial court no less than ten days prior to trial.  He must make an offer of proof establishing the relevance and admissibility of that kind of evidence by affidavit.  If the court finds that the offer of proof raises a sufficient question to warrant a hearing, it must conduct that hearing in chambers and determine whether the probative value of the evidence substantially outweighs the probability that it will be prejudicial.  Wyo. Stat. Ann. § 6-2-312.[4]

---

[4] § 6-2-312 provides as follows:

> (a) In any prosecution under this article [the sexual assault statute] or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:
> > (i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;
> > (ii) The written motion shall be accompanied by affidavits in which the offer of proof is stated;
> > (iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;
> > (iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section.  The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.
> (b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.
> (c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny in any manner, including posttrial proceedings.

5

[¶18] Although the text of the statute does not expressly identify whom it is intended to protect, this Court answered that question nearly twenty-four years ago.

> Wyoming, along with most other jurisdictions, enacted a "rape-shield" statute to bring under control a long-standing tradition that rape victims could be discredited as witnesses based on prior sexual conduct. This tradition was based on the faulty notion that women who engaged in nonmarital intercourse were immoral and likely to engage in such conduct on any given occasion, and was deemed prejudicial and humiliating to the victim.

*Stogner v. State*, 792 P.2d 1358, 1362 (Wyo. 1990) (citation omitted). We noted that the sort of evidence to which the statute relates is "generally *not* admissible" in Wyoming. *Id.* That is, only in the unusual case will the probative value of this kind of evidence substantially outweigh its highly probable prejudicial effect on the victim and the public policy underlying the statute's enactment. It is against this yardstick that we measure McGarvey's ineffectiveness claim.

[¶19] When counsel filed his motion on August 29, 2012, he had been representing McGarvey for just over a month, was facing a trial set for September 17, 2012, and was awaiting a hearing on his motion to suppress. As noted above, with the ten-day time limit of § 6-2-312 fast approaching, he possessed very little information relating to TM's sexual history before she met his client other than what could be found in police reports.

[¶20] McGarvey asserts that counsel's misunderstanding of § 6-2-312 led him to argue that the proffered evidence was relevant to TM's credibility, and that he should instead have argued it was relevant to the issue of consent. We see little distinction between the two. Counsel in effect argued that TM had a motive to lie about consenting to performing sex acts with McGarvey because she may have consensually engaged in some sort of sexual conduct with another man earlier that night. This in turn was evidently to try to show that she had consensual oral sex and intercourse with McGarvey because she had consensual sex with someone else.

[¶21] That is precisely the kind of evidence and argument the rape shield statute was intended to prevent, and counsel's efforts to avoid saying so outright suggest that he understood the reach of that statute and devised an ultimately unsuccessful strategy to try to introduce evidence it clearly prohibited. In short, McGarvey has not shown that counsel's understanding and performance fell short of what the constitution required of him, but instead that he lost an uphill battle to admit evidence that he should not have

---

Wyo. Stat. Ann. § 6-2-312 (LexisNexis 2013).

been allowed to present to the jury. Because we do not find counsel's performance ineffective in this respect, we need not engage in the second prong of the *Strickland* analysis.

[¶22] Counsel's alleged misunderstanding of the DNA evidence also provides an inadequate basis for an ineffective assistance claim. A forensic biologist at the State Crime Lab separated the samples taken from McGarvey's penis, TM's panties, and TM's vagina into "sperm" and "non-sperm fractions" by a process she called differential extraction. She testified that the sperm fraction contains DNA from seminal fluid only if sperm are present in the fluid. The non-sperm fraction may contain DNA from seminal fluid even if no sperm are present in the fluid.

[¶23] The sperm fraction of the sample taken from McGarvey's penis yielded no detectable level of DNA because few or no sperm cells were present. The non-sperm fraction contained some of his DNA and a substantial amount of TM's DNA from a bodily fluid of some type. The sperm fraction from TM's panties revealed the presence of seminal fluid, but the amount of DNA recovered was too small to allow it to be attributed to any particular person. What little could be tested was inconsistent with McGarvey's DNA. The non-sperm fraction contained a mixture of his and TM's DNA. The vaginal swab's sperm fraction yielded a sample too small for testing, and its non-sperm fraction contained mostly TM's DNA. However, it also indicated the presence of male DNA which could not be linked to McGarvey due to the small sample size.

[¶24] Although the lab report was not made part of the record on appeal, it appears that counsel's misunderstanding of it derived from its reference to sperm and non-sperm fractions and its exclusion of McGarvey as a contributor of sperm cells in samples taken from TM and her clothes. He evidently believed that a sperm fraction referred to the recovery of a testable amount of sperm cells and, accordingly, that the failure to identify McGarvey as the source of those cells indicated that someone else had recently had sex with TM. When that reading of the lab report became an issue during pretrial proceedings, the forensic biologist who wrote the report conceded that it could be read that way, but clarified that her tests identified no "third donor" to the samples collected and tested due to the sample size. Counsel's subsequent conversations with her resolved the ambiguity prior to trial.

[¶25] Even if one could say that a reasonably competent attorney would have obtained this information earlier, McGarvey cannot show that his attorney's performance prejudiced him. Had counsel known the true meaning of the lab report, he would have had even less support for the rape shield motion, because the DNA evidence did not support his claim that TM had engaged in sexual intercourse with someone else that evening.

7

[¶26] Although enlightenment as to the meaning of the DNA evidence came later than McGarvey argues it should have, the knowledge was put to good use at trial as counsel emphasized the lab's inability to identify any DNA from McGarvey in the samples taken from TM's vaginal area. He was acquitted of the count charging him with forced intercourse, which strongly suggests that his counsel made good and workmanlike use of the DNA evidence. McGarvey has failed to show that his trial attorney was constitutionally ineffective in regard to the rape shield evidence motion or the use of DNA evidence.

**Intoxication During Law Enforcement Interview**

[¶27] McGarvey claims that his attorney was ineffective in failing to investigate and put on evidence at the suppression hearings of his "probable level of intoxication" during his interview with detectives. He asserts that if counsel had done so, he could have shown that his statements to the detectives that he forced TM to have sex with him were involuntary and would therefore have been suppressed.[5] He argues only that the record contains no indication that counsel tried to contact the bartender at Joe's Liquor, where officers found him approximately eleven to twelve hours after he was accused of assaulting TM. This hardly suffices to carry his burden of showing counsel's representation was defective.

[¶28] The detective assigned to find McGarvey located his vehicle at Joe's Liquor between 1:30 and 2:00 in the afternoon. It had not been there thirty minutes earlier. McGarvey went there to help the owner—his friend, Angela Gaensslen—because she could do no heavy lifting due to a health condition, and they went to lunch about 11:30 that morning. With that information, along with McGarvey's claim that he had six drinks the night before at Bomber's and the Astro, counsel would have had little reason to expect that his client was intoxicated when the detectives spoke to him. Moreover, although McGarvey claimed he was under the influence to the extent he should not have been driving, counsel was presumably aware that the detectives and deputies who had close contact with him that day would testify that he showed no signs of intoxication, or he would not have been allowed to drive to the sheriff's office for his interview.

[¶29] It is also important to note that while McGarvey claims that there is no evidence that his attorney spoke to the bartender, Ms. Gaensslen, he fails to mention that before the second suppression hearing, his attorney subpoenaed her for the trial that was then set to begin in less than two weeks. The record also reflects that McGarvey's interview with

---

[5] Confessions which are involuntary are suppressed even if Miranda warnings are given, and they may not be used for impeachment in cross-examination if the defendant testifies. *United States v. Patane*, 542 U.S 630, 639, 124 S.Ct. 2620, 2627, 159 L.Ed.2d 667 (2004); *Oregon v. Elstad*, 470 U.S. 298, 305-07, 105 S.Ct. 1285, 1291-92, 84 L.Ed.2d 222 (1985); *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct 2408, 2416, 57 L.Ed.2d 290 (1978); *Lewis v. State*, 2002 WY 92, ¶¶ 17-18, 48 P.3d 1063, 1068 (Wyo. 2002); 1 *McCormick On Evidence* § 162 (7th ed. updated 2013).

8

the detective was recorded, and that it was available to trial counsel before the suppression hearings. One would expect the recording to reveal signs of intoxication such as slurring of words, lack of comprehension, etc., if McGarvey was in fact under the influence of alcohol to the extent necessary to render his statements involuntary. Unfortunately, the recording was not designated as part of the record to be transmitted to us for purposes of this appeal, and we cannot therefore review it.

[¶30] Strained speculation weakened by what appear to be material omissions from the record will not suffice to show that trial counsel's representation fell below that which would have been rendered by a reasonably competent attorney. McGarvey has therefore not shown that his attorney was ineffective in this respect.

**The Prosecutor's Closing Argument**

[¶31] McGarvey's final ineffective assistance claim is that counsel failed to object to a misstatement of law by the prosecutor in her rebuttal closing argument. We perceive the argument she made differently than he does.

[¶32] The prosecutor began her rebuttal by reminding the jury that the case was not about what either attorney believed the facts to be, but about what the jury found them to be after considering the witness testimony, recordings, photos, and scientific testing on physical evidence. She argued the significance of the DNA evidence, the clumps of hair pulled from TM's scalp, and testimony about a distraught TM appearing naked at the Bowles home and saying immediately that she had been raped. She spoke of McGarvey's admission to the detective that he forced TM to have sex and his efforts to explain away that admission at trial. She reminded the jury that TM's panties were torn off in the encounter.

[¶33] She then uttered these words, which McGarvey claims are improper argument:

> Mr. McGarvey claims this is consensual, he is confused because [TM] is moaning. [TM] is confused. He believes this is consensual. Well, that doesn't matter either. It doesn't matter if McGarvey is confused. It doesn't matter if he thinks maybe it's consensual. If there is a forcible rape going on and somebody has their underwear ripped off and then they are having sex with her after her hair is ripped out, then he thinks it's consensual because that's what he believes, that is not how this works.

After that, the prosecutor contrasted McGarvey's trial testimony as to why he believed the sex with TM was consensual with his statement to the detective investigating the alleged crime the day after it occurred. In his statement, he said he forced TM's head

down, pulling her hair and telling her repeatedly to "suck it." He also lamented forcing himself upon her. As the prosecutor put it, "This is what he believed on the 28th [] day of December 2010[.]"

[¶34] Reviewing the contested passage in context, as trial counsel and the jury heard it, we do not find the argument to be a comment on the law the jury had to apply. It was a comment upon the evidence, *i.e.*, that McGarvey's current belief that the sexual contact he had with TM was consensual doesn't matter as much as his statements shortly after the offense and the physical evidence that he used force to compel TM to perform fellatio. Accordingly, a reasonably competent attorney was not required to object under the circumstances.

## CONCLUSION

[¶35] Appellant McGarvey has not carried his burden of establishing from the record that his trial attorney was ineffective. Therefore, we affirm his conviction and sentence.