# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 147

OCTOBER TERM, A.D. 2015

*November 23, 2015*

PHILIP GLENN GUILFORD,

**Appellant**
**(Defendant),**

v.

S-15-0058

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Albany County*
*The Honorable Jeffrey A. Donnell, Judge*

*Representing Appellant:*

Thomas A. Fleener, Fleener Law, LLC, Laramie, Wyoming; Tim Newcomb, Appellate Consultation, Laramie, Wyoming; Cody Jerabek, Third Year Law Student. Argument by Mr. Jerabek.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General; Charlotte M. Powers, Assistant Attorney General. Argument by Ms. Powers.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Philip Guilford appeals from a felony conviction for driving a vehicle while under the influence of intoxicating liquor or controlled substances (DWUI).[1]  We affirm.

## ISSUES

[¶2]    Guilford advances two issues that we reorder and restate as follows:

    I.    Is Wyo. Stat. Ann. § 31-5-233(b)(iii)(C) (LexisNexis 2015) unconstitutionally vague as applied to Guilford's conduct?

    II.    Were Guilford's attorneys constitutionally ineffective in failing to present evidence relating to the concentration of alcohol and tetrahydrocannabinol (THC) in his blood?

## FACTS

[¶3]    After drinking beer at a friend's home in Laramie on July 24, 2013, Guilford left for his mountain cabin alone sometime between 11:00 p.m. and midnight. Approximately thirty miles west of town, and around 1:00 a.m. on July 25, he rolled his Toyota Tacoma pickup onto its passenger side off the north edge of the graveled Dutton Creek Road.  He had just crossed under Interstate 80, and he climbed over an elk fence to reach the highway, where he was eventually found by Trooper Devries of the Wyoming Highway Patrol.

[¶4]    Corporal Yates of the Albany County Sheriff's office met the trooper on the interstate at approximately 3:20 a.m.  He questioned Guilford briefly, and noted red eyes and slurred speech, as well as the distinct odor of an alcoholic beverage.  Yates then accompanied the ambulance sent to transport Guilford to the hospital in Laramie and instructed Deputy Williams to locate and begin an investigation of the crash site.

[¶5]    Deputy Williams left I-80 at the Cooper's Cove exit and drove east on Dutton Creek Road until she came upon Guilford's truck in the proximity of milepost 10.  The scene presented somewhat of a puzzle because nothing in the roadway or the surrounding prairie indicated that the truck had been involved in a full rollover.  It appeared to have rolled only a quarter of a turn onto its side, but the hood had been severely damaged, the windshield and rear window were shattered and missing, and what appeared to be fragments of a missing camper shell were still attached to the bed of the truck.

---

[1] This crime is a felony if it is a defendant's fourth or subsequent such offense resulting in a conviction within ten years.  Wyo. Stat. Ann. § 31-5-233(e).

[¶6]    After a tow truck arrived to remove the Toyota, Deputy Williams drove east on Dutton Creek Road until she spied a camper shell in a field at approximately milepost 9. Also scattered around that area were a ladder, a cooler, a green bag, Guilford's cell phone, and painting supplies.  In the green bag, the deputy found Guilford's driver's license, his Wells Fargo card, and a small plastic bag containing what appeared to be marijuana.

[¶7]    The deputy concluded from the materials scattered around the scene that Guilford's truck had rolled over fully in that area, ending up back on its wheels.  In addition, she observed tire tracks between the two rollover sites that indicated the truck had swerved off the road four additional times between the first and second rollovers.

[¶8]    Eventually Deputy Williams joined Corporal Yates at the hospital.  After undergoing a preliminary evaluation and treatment of his injuries, Guilford consented to having his blood drawn for testing, and a sample was drawn at 6:53 a.m. on July 25, 2013.  Analysis revealed that at that time his blood alcohol concentration (BAC) was .09%, and that delta 9 THC[2] was present at a concentration of 3.43 nanograms per milliliter of blood.

[¶9]    On October 15, 2013, Guilford was charged with a single count of felony DWUI under two alternative statutory provisions.  The first prohibits driving a vehicle while under the influence of a combination of alcohol and a controlled substance to such a degree that the driver is incapable of doing so safely.  Wyo. Stat. Ann. § 31-5-233(b)(iii)(C).  The second prohibits driving with a BAC of .08% or more.  Wyo. Stat. Ann. § 31-5-233(b)(i).

[¶10]  The case was bound over to the district court on April 28, 2014, and two months later the court scheduled a jury trial for October 6.  On July 7, the cutoff date the court established for filing motions, Guilford filed a motion for the disclosure of exculpatory evidence.  That motion included a demand that the prosecution forward a sealed container of a portion of the blood earlier drawn from Guilford to the defense for independent testing.[3]  Two days later the court scheduled a hearing on all pending motions for August 26, 2014.

[¶11]  On August 25, the day before the motion hearing, Guilford filed a motion for an order allowing him to obtain the blood sample and retest it.  The court denied the motion at the next day's hearing because Guilford failed to show good cause why the motion was

---

[2] Testimony defined delta 9 THC as the component of marijuana which, while present in the blood, is actively affecting the user.  By contrast, its various metabolites are inactive, and their presence in the blood indicates the body has begun breaking down the active "parent" component.

[3] It is unclear whether Guilford intended the two-and-a-half-line demand to fall within the rubric of the remainder of his five-page motion for exculpatory evidence, or to somehow stand alone as a request for something more than exculpatory evidence.

filed nearly seven weeks after the motion cutoff date, and why thereafter it had not been filed within a reasonable time after learning that the Sheriff refused to turn over the blood sample without a court order.[4] The court therefore held that he had waived the right to have the motion considered.

[¶12] At the trial held on October 6, 2014, the prosecutor introduced expert testimony establishing that if alcohol consumption ceases six hours prior to BAC testing, a person's BAC will decrease significantly during that period. The same is true with respect to the concentration of THC in a person's blood after smoking marijuana. Moreover, a combination of alcohol and marijuana consumption would impair one's ability to drive to a significantly greater degree than the use of either substance alone. Guilford put on no witnesses.

[¶13] The jury found him guilty of DWUI under both theories advanced by the prosecution, and on December 22, 2014, the district court sentenced Guilford to six to seven years confinement.[5] He timely perfected this appeal from that judgment.

## DISCUSSION

**Vagueness**

[¶14] Guilford contends that one of the two provisions of Wyo. Stat. Ann. § 31-5-233 under which he was alternatively charged and convicted is unconstitutionally vague as applied to his conduct, and that his conviction must therefore be vacated. That constitutional challenge summons our *de novo* standard of review, and places a heavy burden on Guilford to overcome a presumption of constitutionality, which requires this Court to resolve any reasonable doubts in favor of the statute's validity. *Teniente v. State*, 2007 WY 165, ¶ 83, 169 P.3d 512, 536 (Wyo. 2007); *Sanderson v. State*, 2007 WY 127, ¶ 31, 165 P.3d 83, 92 (Wyo. 2007).

[¶15] In evaluating an as-applied vagueness challenge, we examine the language of the particular statutory provision under which Guilford was charged and convicted, as well as the specifics of his conduct proven at trial. That provision is not unconstitutionally vague if its wording can reasonably be said to provide sufficient notice to a person of ordinary intelligence that his conduct was illegal. *Teniente*, ¶ 91, 169 P.3d at 537; *Sanderson*, ¶ 30, 165 P.3d at 92.[6]

---

[4] Defense counsel appears to have conceded that the prosecutor advised him of the Sheriff's position within three weeks of the motion cutoff date.

[5] Guilford received only one sentence because the charges were alternatives.

[6] We have previously observed that the vagueness doctrine embodies a rough idea of fairness, and that it is not intended to create a constitutional dilemma from the practical difficulties in crafting criminal statutes that are both sufficiently general to take into account the desired scope of behavior and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. Thus, to some extent, application of the doctrine looks to whether a citizen who desires to obey the statute will have

[¶16] The provision Guilford questions is the first of the two alternate grounds for his DWUI prosecution and conviction, and it reads as follows.

(b) No person shall drive or have actual physical control of any vehicle within this state if the person:

. . .

(iii) To a degree which renders him incapable of safely driving:

. . .

(C) Is under the influence of a combination of any of the elements named in subparagraphs (A) and (B) of this paragraph.

Wyo. Stat. Ann. § 31-5-233(b)(iii)(C). Subparagraphs (A) and (B) also deal with driving under the influence, and relate respectively to alcohol and controlled substances.

[¶17] In this as-applied challenge, we evaluate the constitutionality of that provision solely in light of the State's evidence of Guilford's conduct, giving it the benefit of every favorable factual inference that may be fairly drawn from the record. *Dougherty v. State*, 2010 WY 127, ¶ 16, 239 P.3d 1176, 1181 (Wyo. 2010); *Sanderson*, ¶ 31, 165 P.3d at 92.

[¶18] The evidence showed that Guilford drove his pickup after consuming beer and marijuana on July 24, 2013, and that more than seven hours after having last partaken of those substances, his BAC was .09%, and he had a THC level of 3.43 nanograms per milliliter of his blood. It is reasonable to infer from those facts that these substances still affected him while he was driving. Testimony also permits the reasonable inference that the blood level of both substances was considerably higher at the time he rolled his truck six hours before the blood was drawn for testing, and that in combination they would impair his driving abilities to a greater extent than the use of either substance alone.[7] No person of ordinary intelligence could reasonably imagine that the statute's proscription of driving while under the influence of a combination of alcohol and a controlled substance did not reach these facts.

---

difficulty understanding it. *Giles v. State*, 2004 WY 101, ¶ 21, 96 P.3d 1027, 1034 (Wyo. 2004) (citing *Colton v. Commonwealth of Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972)).
[7] Guilford makes much of the fact that the concentration of THC in his blood was less than the five nanograms/milliliter that Colorado views as sufficient to raise a permissible inference that a driver is too intoxicated to operate a vehicle. *See* Colo. Rev. Stat. § 42-4-1301(6)(a)(IV). However, that standard applies to driving while under the influence of only marijuana, and seven hours after leaving Laramie Guilford's blood level was still 68.6% of the Colorado standard.

4

[¶19]  Furthermore, the record reveals no cause other than that combination of substances that might explain Guilford's astounding lack of perception and dexterity approximately one hour and thirty miles into his drive to his cabin.  He left the road and completely rolled his truck, which ripped off his camper shell, scattered the bed's contents over the prairie, damaged the truck's body and windows, and the vehicle then miraculously landed on its tires.  Within the next mile he drove off the road four more times and eventually rolled the vehicle again, this time onto its passenger side.  We believe that at some point during the events of that evening, a person of ordinary intelligence would have understood that his actions were prohibited by the relevant statutory language—i.e., that the influence of two intoxicating substances made him incapable of driving safely and that he should not do so.

[¶20]  Guilford has not carried his burden of showing that Wyo. Stat. Ann. § 31-5-233(b)(iii)(C) is unconstitutionally vague as applied to his conduct on July 24 and 25, 2013.

**Ineffective Assistance**

[¶21]  Guilford asserts that his trial attorneys were ineffective because they:  (1) failed to file a timely motion to have his blood retested; (2) failed to investigate his BAC; (3) failed to investigate the THC level in his blood; and (4) failed to call an expert regarding his THC level.  Points 2 and 3 rely in whole or in part on point 1.  We can therefore reduce those three claims of ineffective assistance to the single question of counsel's failure to get Guilford's blood retested.  The remainder of point 3 and all of point 4 rely entirely on the mistaken notion that, under Wyo. Stat. Ann. § 31-5-233(b)(iii)(C), the State must prove that Guilford's marijuana use alone rendered him incapable of safely driving.  As noted repeatedly above, that statute deals with the combined effect of using both alcohol and marijuana.  We therefore reject that aspect of his ineffectiveness claim out of hand.[8]

[¶22]  Whether Guilford's attorneys were ineffective in failing to timely seek a blood sample which could be retested, like all ineffectiveness claims, involves mixed questions of law and fact and invokes *de novo* review.  To prevail on that claim, Guilford must show both that counsel's performance was deficient because it fell below the standard

---

[8] Guilford's arguments relating to points 3 and 4 rely heavily on the Colorado statute discussed in n.7 above, and he claims that the statute deems it safe to operate a vehicle at THC concentrations below five nanograms per milliliter of blood.  It does not – it says only that five nanograms/milliliters are sufficient to raise a permissible inference that a driver is too intoxicated to operate a motor vehicle safely.  Moreover, one respected authority has confessed that, with most drugs, it is not currently possible to establish from available studies any threshold concentration at which they impair the ability to operate a motor vehicle.  Research does show, however, that combining alcohol and marijuana may create a greater risk for vehicular accidents than using either by itself.  5 *Modern Scientific Evidence* § 42:56 (2014-2015 ed.).

required of a reasonably competent attorney, and that those inadequacies prejudiced the defense. *Hibsman v. State*, 2015 WY 122, ¶¶ 14-15, 355 P.3d 1240, 1244 (Wyo. 2015); *McGarvey v. State*, 2014 WY 66, ¶ 12, 325 P.3d 450, 454 (Wyo. 2014).

[¶23] Proof of prejudice requires that Guilford demonstrate a reasonable probability that, absent counsel's alleged shortcomings, the outcome of his trial would have been different. *Hibsman*, ¶ 18, 355 P.3d at 1245; *McGarvey*, ¶ 14, 325 P.3d at 455. This Court need not and should not evaluate an attorney's performance if we can dispose of an ineffective assistance claim on the lack of sufficient prejudice. *Hibsman*, ¶ 15, 355 P.3d at 1244; *McGarvey*, ¶ 15, 325 P.3d at 455. That is the course we follow in this case.

[¶24] Guilford has never claimed that weather conditions, the condition or features of Dutton Creek Road, medical problems, or the mechanical condition of his Tacoma contributed in the slightest degree to his vehicular mishaps. He told Corporal Yates that he quit drinking before leaving Laramie, and by all accounts his marijuana remained among the detritus at the scene of his first rollover, meaning that he could not have consumed it after that. Consequently, the only evident cause of his repeated off road excursions was the alcohol he consumed in Laramie and any marijuana he consumed in an unknown time period prior to 1:00 a.m. on July 25, 2013.

[¶25] Six to seven hours after Guilford last partook of those substances, the concentration of alcohol in his blood was greater than the legal limit in Wyoming, and the concentration of THC was 68.6% of the level which, in Colorado, would indicate that he was too intoxicated to drive by virtue of marijuana alone. He points to no authority contradicting testimony that the concentration of both substances would have been higher at the time of his rollovers, or that their combined effect would have been greater than that of just one. Nor does he point to anything uncovered during discovery that would suggest the testing protocols or results were faulty or inaccurate.

[¶26] Even if there was a strong likelihood that retesting of Guilford's blood would have yielded a significantly smaller concentration of both substances (nothing so indicates because the blood has never been retested), we are still left with a detectable amount of THC in his system, his admission that he drank "a few beers" before leaving Laramie, and the fact that slightly more than an hour later he drove off the road more than four times and rolled his pickup twice in the span of one mile. On that evidence, a jury could still have found him guilty of driving under the influence of the combination of those substances when he could not safely do so.

[¶27] Under these circumstances we are unable to conclude that the results of retesting the blood samples would have made acquittal under both of the alternatives charged by the State reasonably probable even if counsel had timely sought and obtained leave to retest. In short, Guilford has not shown the required prejudice to prove that his trial counsel was ineffective.

**CONCLUSION**

[¶28]   Wyo. Stat. Ann. § 31-5-233(b)(iii)(C) is not unconstitutionally vague as applied to Guilford's conduct, and he has not carried his burden of showing his trial attorneys were constitutionally ineffective in failing to present evidence relating to the concentration of alcohol and THC in his blood.  Consequently, we affirm his felony DWUI conviction.